**In re MS:**

**RDS, II, Appellant (Plaintiff),**

v.

**GEMN, Appellee (Defendant).**

**No. C–99–10.**

Supreme Court of Wyoming.

Aug. 4, 2000.

Representing Appellant: Fred R. Dollison, Sheridan, Wyoming.

Representing Appellee: Lynn Boak, Cheyenne, Wyoming.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.

GOLDEN, Justice.

Appellant RDS II (Father) sought custody of his minor child, MS, and appeals the trial court's order awarding joint legal custody and placing primary care with Appellee GEMN (Mother). Father was granted liberal visitation and ordered to pay child support. He contends that the child's preference was the sole basis of the award and the

order is contrary to the evidence. After examining the record, we find that the evidence supports the decision, and the district court properly used its discretionary power when it determined it was in the best interest of the child to remain in Mother's physical custody. We affirm.

## ISSUES

Father presents this issue on appeal:

Did the trial court abuse its discretion in awarding custody of a minor child to the mother solely on the basis of the child's preference and contrary to the recommendation of the court's appointed expert and contrary to the evidence?

Mother rephrases the issue as:

Was the weight of the evidence sufficient to support the trial court's decision to order custody of the minor child to remain with the mother?

## FACTS

MS was born on May 28, 1993, to unmarried parents and cared for solely by Mother. Father refused to place his name on the birth certificate and did not begin paying child support until MS was three years old. In 1997, Mother married and later had a second child. In August of 1997, Father acknowledged paternity, a new birth certificate issued, and he began paying an increased amount of child support.

The parents' relationship was contentious, and in May of 1998, when MS was almost five years old, Father petitioned for custody. Mother counterclaimed to declare Father's paternity and for custody and support. Mother was granted temporary custody, support and attorney fees, and the parties stipulated to appointment of a guardian ad litem (GAL). Additionally, a court-appointed special advocate (CASA) was engaged to investigate abuse reports made against each parent. At Father's request, an expert witness, Dr. Ray Leugers, was appointed by the court to evaluate both parents and the child. During discovery, the district court compelled Father to provide financial information to Mother or be subject to sanctions.

The CASA and GAL submitted reports indicating that neither parent was abusive to MS and both recommending that custody remain with Mother. The matter went to trial, and Dr. Leugers testified that based on the results of various psychological tests, custody should be changed to Father because MS was fearful of her Mother's temper. Dr. Mary Bowers, MS' pediatrician since birth, testified for Mother and described her as a good mother who had provided good medical care for the child since her birth, and had timely accomplished all recommended well-care treatment. In contrast, she described the few instances when Father had brought in the child as disruptive and involved accusing Mother of abuse and other inappropriate behavior in front of MS. On one occasion when Father brought MS in for bruising that he believed Mother had abusively inflicted, it was determined the child had received her bruises at Scotty's Skate Castle. Dr. Bowers acknowledged that Mother had difficulties with MS, but contended that she was a good mother who behaved appropriately with and in front of the child.

In its decision letter and order, the district court found that it was in MS' best interests to be in the primary care and custody of Mother subject to reasonable and liberal visitation with Father. Neither the decision letter nor the order articulates any findings of facts except that, noting that the parties' stipulation for the GAL specifically required it to reveal the child's preference, the court stated that the GAL had expressed MS' preference to Mother's primary custody. Father appeals.

## DISCUSSION

■ Father contends that the district court abused its discretion because the absence of findings on the issues of custody and best interests indicates that the court based its decision solely on the child's stated preference and ignored the great weight of the evidence presented by Dr. Leugers and his recommendation that Father should have custody. As we observed in *Resor v. Resor*, 987 P.2d 146, 148 (Wyo.1999), our standard of review was succinctly stated in *Reavis v. Reavis*, 955 P.2d 428 (Wyo.1998):

Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored.

*Id.* at 431 (citations omitted).

A trial court relying on discretionary power is not required to place on record the circumstances and factors that were crucial to its determination unless one of the parties requests it under W.R.C.P. 52(a). *Resor,* 987 P.2d at 148. Our review of the record affording Mother every favorable inference while omitting any consideration of Father's evidence reveals that MS has spent her entire life in her mother's custody and is attached to her new baby sister. Every case, however, requires careful weighing of relevant factors, looking to the unique and individual family relationships, in order to reach a resolution in the best interests of the children in that family. *Reavis,* 955 P.2d at 431. Stability in a child's environment is of utmost importance to the child's well-being. *Id.* at 432. In this case, Mother ably demonstrated that she has provided a nurturing, stable environment, has the ability to continue to do so, and has encouraged her daughter's relationship with her Father since birth. In contrast, Father's emotional and financial support of his daughter has been sporadic and contentious, and although MS loves her Father, his relationship with her has been far less stable than Mother's.

During her pregnancy, Father put Mother out of his home, and although he was present at the child's birth, the hospital required Mother to change the child's name from his to her name after Father refused to sign the birth certificate. His stated reason to her for not signing was to avoid paying the hospital bill. Father initially failed to provide any financial support, and Mother supported herself and daughter by cleaning houses and receiving welfare. The GAL determined that Father's 1997 tax return showed taxes were paid on an income of over $183,000.00. Father's CPA testified that the majority of Father's income derives from trust interest and royalty income from an inheritance, but that he has suffered substantial losses because of a new business venture. In MS' third year, Father began paying $200 per month in child support in order for Mother to stop receiving welfare. Those payments were raised to $400 per month, Father acknowledged paternity, and a new birth certificate was issued.

Mother married, and the relationship between her and Father, contentious since before the child's birth, deteriorated further. Father filed a complaint with the Department of Family Services (DFS) alleging that Mother had abused the child. Both DFS and Dr. Bowers found the allegations to be unsubstantiated. Father has always had visitation with MS, took her to daycare one day per week, which Mother paid for, and has demonstrated adequate parenting skills, although he behaves inappropriately in front of the child by criticizing her mother and failing to take responsibility for disciplining the child when required. Father also failed to timely provide income information for the trial, and the trial court had to impute income to him. The district court determined that his evasiveness had caused Mother to incur additional attorney fees and ordered Father to pay part of those fees.

Mother has provided a stable, loving home environment for MS since her birth. MS is bright, gregarious, and sometimes difficult to control; however, Dr. Bowers indicated that Mother has handled MS' behavior difficulties very well and appropriately sought assistance and counseling. To the extent that Dr. Leugers disagreed that Mother was providing an appropriate living environment for MS, the trier of fact determines factual and credibility issues.

The record indicates sufficient facts to support the trial court's decision, and we affirm.