2001 WY 43

**Vicky H. PACE, Appellant (Plaintiff),**

v.

**Kevin J. PACE, Appellee (Defendant).**

No. 00–50.

Supreme Court of Wyoming.

May 3, 2001.

862

Representing Appellant: John P. LaBuda of Palmer & LaBuda, P.C., Rock Springs, WY.

Representing Appellee: V. Anthony Vehar of Vehar Law Offices, P.C ., Evanston, WY.

Before LEHMAN, C.J., and GOLDEN, HILL and KITE, JJ.

KITE, Justice.

[¶ 1] This appeal concerns a divorce decree which resulted in an unexplained court decision that split custody of the couple's six minor children. The court awarded custody of the two girls to Vicky Pace (the mother) and custody of the four boys to Kevin Pace (the father). We reverse and remand for additional findings and a new trial to elicit additional evidence to supplement the record. We also direct that a complete explanation for the decision be provided as it is not possible to determine from the record whether gender was the sole basis for this split of custody in violation of Wyo. Stat. Ann. § 20–2–113(a) (LEXIS 1999) (repealed 2000).

## ISSUES

[¶ 2] The mother presents these issues for our review:

A. Did the district court award custody of the parties' minor children based upon gender in violation of W.S. 20–2–113?

B. Did the district court fail to justify a change in custody from its prior temporary custody order?

C. Did the district court err in permitting the guardian ad litem to act as attorney and a fact witness?

The father states the issue as follows:

Did the trial court abuse its discretion in its custody award of the parties' minor children?

## FACTS

[¶ 3] The mother filed for a divorce from the father and sought primary physical custody of all six of their minor children. The father answered and also sought custody of the children. The couple had been married for almost nineteen years and had four sons (ages seventeen, thirteen, twelve, and six) and two daughters (ages sixteen and eight). In the Order on Temporary Custody, the court appointed a guardian ad litem (GAL), who was an attorney, for the children and ordered the parties to be examined by an agreed upon mental health professional. The court awarded temporary custody to the mother with reasonable visitation to the father. The court indicated it was in the best interests of the children for custody to be changed no more than once, if possible, and, because the children had been in the moth-

er's custody from the date of separation, it would remain so pending trial.

[¶ 4]   On August 26, 1999, three witnesses testified at trial—the father, the mother, and the GAL. The father and the mother each testified about numerous problems and disputes which had developed over the term of the temporary custody. The mother complained the father made unreasonable, last minute demands for visitation and, on one occasion, entered her home through a window without her knowledge and took three of the boys on an out-of-state trip without her permission. The father, on the other hand, claimed the mother placed unreasonable limitations on his visitation which included requiring the children to complete various chores before the visitation, requiring advance notice of his desire for visitation, and forbidding the children to talk on the telephone. The GAL participated in presenting evidence by questioning the parties as counsel.

[¶ 5]   After hearing testimony of the parent's complaints about one another concerning visitation, the trial court asked the GAL to come forward and testify as to the results of her investigation and to offer her recommendation. Neither party objected to the GAL's report and recommendation being presented through her testimony. The GAL recommended a split arrangement in which the mother would receive custody of the two youngest children, the six-year-old boy and the eight-year-old girl, as well as the sixteen-year-old girl and the father would receive custody of the three boys, ages twelve, thirteen, and seventeen. She further testified that, in her opinion, the oldest girl "could go with the father almost as easily ." The GAL suggested a visitation schedule which would have allowed all the children to be together each weekend, alternating weekends with the mother and the father. She based her recommendation on an investigation which consisted of an approximately four-hour visit, during which she met with each child, and one interview with each parent. The record is devoid of evidence that the GAL consulted with a psychologist for the children, teachers, coaches, relatives, or the parties' and the children's friends.

[¶ 6]   The GAL confirmed the parties were making things difficult for each other during visitation and stated: "[T]hese parents have not been good to each other and have been manipulative and, putting it frankly, jerks to each other during these proceeding[s]." She agreed with the psychologist's conclusion that both parents were dependent, compulsive, and controlling. However, she also observed that the children, in her opinion, were "exceptional," "so responsible, so moral, [and] so caring." Although the GAL recognized the custody recommendation was "unusual," she made it quite clear she primarily based it on her belief that splitting custody would encourage a situation where "both parents will make sure the other parent will have access to the children." She testified the children expressed a desire to spend as much time with both parents as possible. She also indicated the children had mixed preferences and the youngest child, the six-year-old boy, was the only one who expressly desired to live with his father because he did not like to do the chores his mother required of him. Yet the GAL felt the two youngest children should remain with their mother because they needed the "structure" and "routine" she provided. In her opinion, the middle school and high school aged boys should live with their same gender parent to enhance their "self-esteem."

[¶ 7]   The mother and the father did not agree with the split custody recommendation. The record reveals neither the parties nor the GAL presented evidence concerning a psychologist's opinion of how such a split arrangement would impact the children or how it should be structured. At the end of the trial, the court stated, "I'll think about what to do with the children. I think I've got a handle on what the guardian ad litem wants to do. I don't know if I want to do that."

[¶ 8]   Three weeks later, on September 17, 1999, the court issued an opinion letter which stated simply and without explanation that custody of the four boys, including the youngest child, was awarded to the father and the mother was awarded custody of the two girls. This result was inconsistent with

the evidence presented, the GAL's recommendation, and the parties' positions.

## STANDARD OF REVIEW

[¶ 9] In *Reavis v. Reavis*, 955 P.2d 428, 431 (Wyo.1998) (some citations omitted), we explained our standard of review in domestic relation matters:

Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. "We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle." *Fink* [*v. Fink*], 685 P.2d [34,] 36 [(Wyo.1984)].

We recently clarified the definition of an abuse of discretion when we stated the core of our inquiry must reach "the question of reasonableness of the choice made by the trial court." *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998). In *Vaughn*, we confirmed the following definition: " 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means [exercising] sound judgment ... with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.' " *Id.* (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)).

[¶ 10] Our review entails evaluating the sufficiency of the evidence to support the trial court's decision, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. We cannot sustain findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored. *RDS v. GEMN*, 9 P.3d 984, 986 (Wyo.2000).

## DISCUSSION

[¶ 11] "The law affords wide discretion to the district court when fashioning custody and visitation provisions for the best interests of the children." *Reavis*, 955 P.2d at 431. We recognize such discretion encompasses one of the most difficult and demanding tasks assigned to a trial judge. *Id.* Ultimately, the "goal to be achieved is a reasonable balance of the rights and affections of each of the parents, with paramount consideration being given to the welfare and needs of the children." *Leitner v.. Lonabaugh*, 402 P.2d 713, 720 (Wyo.1965); *see also Dowdy v. Dowdy*, 864 P.2d 439, 440 (Wyo.1993).

### A. Section 20–2–113(a)

[¶ 12] The mother contends the custody arrangement chosen by the trial court, wherein each parent was awarded custody of the children of his/her same gender, violated § 20–2–113(a) [1] (emphasis added), which provided in pertinent part:

(a) In granting a divorce or annulment of a marriage, the court may make any disposition of the children that appears most expedient and beneficial for the well-being of the children. The court shall consider the relative competency of both parents and ***no award of custody shall be made solely on the basis of gender of the parent.***

Consideration of gender is not prevented in a custody award. The statute simply prohibits gender from being the "sole" basis of a custody award. The difficulty with our review arises because we cannot determine from the court's order what factors formed the basis for its decision. Certainly, under these circumstances where each of six children was awarded to his/her parent of the same gender, a reasonable inference can be drawn that gender was a consideration. However, this inference may be rebutted if it appears the court considered other relevant factors in addition to gender. In the instant case, be-

---

1. This statute was repealed in 2000; however, similar language was included in Wyo. Stat. Ann. § 20–2–201(b) (LEXIS Supp.2000): "(b) In any proceeding in which the custody of a child is at issue the court shall not prefer one (1) parent as a custodian solely because of gender."

cause there is not an adequate explanation evident in the court's decision letter, the court order, or the court's remarks in the trial transcript, we are unable to determine whether the court abused its discretion by violating the statutory prohibition against reliance on gender as the sole basis for a custody decision.

[¶ 13] In addressing the determination of child custody, we have previously stated: "Every case ... requires careful weighing of relevant factors, looking to the unique and individual family relationships, in order to reach a resolution in the best interests of the children in that family." *Reavis*, 955 P.2d at 431. "To determine whether a district court has abused its discretion, we must rely on the district court's articulation of the factors which were considered and how those factors support its conclusions." *Id.* The decision in this instance leaves this court to speculate as to the trial court's reasoning. The only statement provided by the court was in the Judgment and Decree of Divorce, wherein it held: "It is in the best interests of the children, and the parties, to structure child custody and visitation in a manner that will encourage the parties to allow a maximum of parent-child contact between all the children and each of the parents." The father's counsel creatively suggests the decision resulted from the court's desire to split the youngest children to ensure the division in custody would last until all the children left the home, thus encouraging continued cooperation of the parents. However, this is pure speculation as there is no trial court explanation.

[¶ 14] The gender issue standing alone would require a remand for an explanation of the factors considered by the trial court to assure the statute has not been violated. However, for the reasons discussed below, the court's findings are insufficient to support its result.

## B. Unconventional Custody Award—Findings and Explanation

[¶ 15] The trial court ordered an unconventional custody approach which separated siblings from each other through a custody award to different parents. As we suggested in *Reavis*, when a trial court is exercising its discretionary power in custody matters, it should place on the record the circumstances and factors which were crucial to the determination. The court should further spell out its reasons so counsel and the reviewing court can understand and evaluate the soundness of the decision. 955 P.2d at 431–32. We conclude the need is paramount when a court chooses an unconventional custody arrangement as occurred in this case. The separation of siblings from each other through custody awards to different parents is not a preferred resolution and will receive stringent appellate review. *Dowdy*, 864 P.2d at 440. The value of a trial court's explanation has been succinctly stated:

[I]t is important that the exercise of discretion be accompanied by the trial court's articulation of the factors considered and the weight accorded to them.... [A]rticulation of the reasons for the decision tends to provide a firm base for an appellate judgment that discretion was soundly exercised. It confines review of the exercise of discretion to its appropriate scope—*i.e.,* whether the relevant factors were considered and given appropriate weight....

*United States v. Criden*, 648 F.2d 814, 819 (3d Cir.1981).

[¶ 16] In *RDS*, we stopped short of requiring such clarity of the trial court, relying instead on W.R.C.P. 52(a) which allows counsel to request findings of fact and conclusions of law. 9 P.3d at 986. However, *RDS* is distinguishable from the instant case as the custody arrangement the trial court chose was not unconventional. In that case, the trial court awarded primary physical custody of the child to the mother who was the primary caregiver. 9 P.3d at 985. In contrast, this case is more analogous to *Reavis* wherein the trial court ordered an unconventional approach which provided each party custody of the children in alternating nine-week periods during the school year. 955 P.2d at 430. In response to this custody arrangement, this court stated: "Unfortunately, we are provided scarce explanation for the custody arrangement ordered in this case; one which substantially deviates from the requests of the parties and is unique to

the experience of this court." 955 P.2d at 432.

[¶ 17] As future guidance to the trial courts, we hold that, when the exercise of its discretion in custody matters involves splitting custody[2] of children between parents or other unconventional custody approaches, the trial court must provide an explanation of its reasoning and place its findings on the record. A reasoned explanation and an expression of findings of a trial court's conclusion will assure this court that a comprehensive evaluation of all relevant factors occurred prior to the award of custody.

[¶ 18] The parties' lawyers cannot remain passive. To assist the trial judge, each is obligated to articulate on the record the relevant factors and their relative weight which, in the lawyer's professional judgment, should inform the trial court's exercise of judicial discretion. Some of the relevant factors might include, but are not limited to, the wishes of the parents and the children, the children's interaction and interrelationship with their parents and others who are important in their lives, the children's adjustment to their environment, the mental and physical health of all persons involved, the parent who is more likely to honor and facilitate visitation, whether either parent has failed to make required child support payments, and whether either parent has been involved in any matter involving abuse or neglect of a child. The examination of these and other appropriate factors will provide the appellate court with a well informed basis for distinguishing between a trial court's well reasoned conclusions reached after a comprehensive consideration of all relevant factors and a mere boilerplate approval phrased in the "magic words."

## C. Unconventional Custody Arrangements—Additional Evidence

[¶ 19] Under ordinary circumstances, a remand to obtain a complete explanation of the trial court's decision in an unconventional custody award would be an adequate remedy. However, the facts in this case require the trial court's decision be reversed due to insufficient evidence in the record to support the particular custody split which was ordered. The trial court's decision differs substantially from the split custody arrangement recommended by the GAL. As stated in *Reavis:* "The district court offered no explanation regarding the children's ability to handle the sweeping changes imposed, nor did the district court express why such changes would be in the children's best interests." 955 P.2d at 433. In addition to the trial court's belief that the split custody would force the parents to cooperate, the impact its decision will have on the children must be paramount. For instance, what impact will the court's decision have on the youngest girl, who will now or soon be essentially an only child when her older sister, who was seventeen at trial, leaves home? What impact will the court's decision have on the youngest boy whom the GAL recommended should remain with his mother in order to benefit from the structure she provided? Similarly, what impact does separating the two youngest children have on their development? Finally, the testimony presented at trial was that the mother had been the children's primary care provider until the separation. The trial court must address how the best interests of the children are met by a change from their mother's primary custody to the split custody arrangement ordered by the court. If a trial court is willing to separate siblings and award their custody to different parents, such a decision must be supported by evidence of how that custody arrangement will impact the children developmentally from either psychological experts, counselors, or other appropriate witnesses.[3]

[¶ 20] In *Dowdy,* we recognized separating siblings from each other through custody awards to different parents is not a preferred resolution. 864 P.2d at 440. Although keeping siblings together is generally considered to be the better practice, the ef-

---

2. In an effort to clarify, we note the term "splitting custody" references separating siblings from each other through custody awards to different parents.

3. A psychologist was retained in this case to conduct an examination of the parents but was not consulted concerning the impact of split custody on the children.

fect of separating siblings from each other is just one of several factors courts consider in determining the best interests of the children. *Id.* In *Dowdy,* this court examined the trial court record and determined there was evidence to support the court's decision to split custody. However, the instant case is distinguishable because the record fails to provide such support for the court's decision, and for that reason we require additional evidence to support the decision. As mentioned earlier, in the Judgment and Decree of Divorce, the trial court held: "It is in the best interests of the children, and the parties, to structure child custody and visitation in a manner that will encourage the parties to allow a maximum of parent-child contact between all the children and each of the parents." Although encouraging parent-child contact by minimizing the parents' interference with one another's visitation is certainly a valid objective, it cannot be the sole basis for a custody award. It should be noted that this court rejected such an approach in *Reavis* and said: "The district court's order, calculated to avoid a parental 'upper hand,' appears to stem from the belief that splitting the prize down the middle is the fairest means to resolve an impasse." 955 P.2d at 434. There may be instances in which a split custody arrangement is in the best interests of the children. This case may even present such a circumstance; however, there must be evidence to support this decision upon remand.

### D. Guardian Ad Litem

[¶ 21] The final issue raised by the mother is whether the trial court erred in permitting the GAL to act as both an attorney and a fact witness at trial. The mother contends the GAL's actions contradict the ruling of *Clark v. Alexander,* 953 P.2d 145 (Wyo.1998), because the GAL received copies of exhibits as the attorney for the minor children, cross-examined each witness, and then was allowed

to give a recommendation under oath and be examined by counsel. The father argues the mother failed to object to the GAL's testimony and, therefore, has failed to preserve the issue on appeal.

[¶ 22] "Generally, we will not address an issue raised for the first time on appeal absent special circumstances." *Clark,* 953 P.2d at 151. However, as we stated in *Clark:* " 'The definition of the precise roles of the attorney and the guardian ad litem for children is still evolving and not without difficulty.' " *Id.* (quoting *S.S. v. D.M.,* 597 A.2d 870, 877 (App.D.C.1991)). Our decision in *Clark* was intended to clarify and provide guidance on the role of an attorney appointed to represent a child while at the same time acting as a guardian ad litem. We take this opportunity to reaffirm the requirement that an attorney/guardian ad litem may not participate as a fact witness in a custody hearing.

[¶ 23] We said in *Clark:* "In Wyoming, the role of an attorney or guardian ad litem in custody cases is not addressed by statute."[4] 953 P.2d at 151. As a result, in *Clark* we defined the traditional roles of both a guardian ad litem and an attorney in custody proceedings and acknowledged the "hybrid" nature of the role of attorney/guardian ad litem. Our stated purpose for the "hybrid" role was to decrease costs attendant to the appointment of both an attorney and a guardian ad litem so family resources could be directed toward the children's needs outside the litigation process. 953 P.2d at 153. The "hybrid" role necessitated a modified application of the Rules of Professional Conduct for Attorneys at Law. *Id.* In particular, *Clark* excused an attorney's strict adherence to the client's expressed preferences and modified the confidentiality requirement. 953 P.2d at 154. However, we specifically did not compromise Rule 3.7 of the Rules of

---

4. We reiterate our plea briefly stated in *Clark,* 953 P.2d at 151, n. 2:

Our decision here does not address many areas of chronic confusion in the appointment of a guardian ad litem, e.g., when an appointment is necessary, the necessary qualifications to serve as guardian ad litem, and the timeliness of the court's communication of the spe-

cific duties expected by the court. In recognition of the need for clarification and the lack of uniformity throughout our state, we urge our courts, legislators, professionals, and concerned citizens to undertake a consolidated effort to address the appointment of counsel and guardians ad litem for Wyoming's children.

Professional Conduct for Attorneys at Law, which prohibits attorneys from participating as advocates in cases where it is likely they will be called to testify to matters of import at the proceedings. As a result, we stated: "[A]n attorney/guardian ad litem may not be a fact witness at a custody hearing." *Id.* We reiterate our reasoning expressed in *Clark,* *id.*:

> Our holding in *Moore,* 809 P.2d 261[,] clearly mandates that the attorney/guardian ad litem is to be an advocate for the best interests of the child and actively participate at the proceedings. As counsel, the attorney/guardian ad litem has the opportunity and the obligation to conduct all necessary pretrial preparation and present all relevant information through the evidence offered at trial. Recommendations can be made to the court through closing argument based on the evidence received. It is, therefore, unnecessary to allow the attorney/guardian ad litem to place his or her own credibility at issue. Consequently, we join those jurisdictions which hold that an attorney/guardian ad litem may not be a fact witness at a custody hearing.

■■■■ [¶ 24] The application of *Clark* to the facts in this case is straightforward. The GAL, who was a licensed attorney, impermissibly acted as both trial counsel and a witness. This resulted in the presentation of the GAL's recommendation to the court in the form of sworn testimony. We conclude the trial court erred in admitting the attorney/GAL's testimony. After we determined there was a similar error in *Clark,* we applied the analysis set forth in *Moore v. Moore,* 809 P.2d 261, 264 (Wyo.1991), which stated that an ethical violation, not brought by the prevailing party, will be reversed only if it results in manifest injustice. "Manifest injustice 'contemplate[s] a situation that is unmistakable or indisputable, was not foreseeable, and affects the substantial rights of a party.' " *Clark,* 953 P.2d at 154 (quoting *McCarthy v. State,* 945 P.2d 775, 777 (Wyo. 1997)). Neither party objected to the GAL's testimony at the hearing, and each party was able to cross-examine her testimony. Further, it is evident from the trial court's order that the GAL's opinion testimony was not

enhanced in the trial judge's eyes as he chose to award a different custody arrangement. We conclude the GAL's testimony did not result in manifest injustice. Upon remand, we anticipate counsel will clearly understand and respect the requirement that the attorney/GAL must refrain from testifying and only provide her report to the court after the full and explicit consent of the parties. Absent such consent, the attorney/GAL must present evidence sufficient to support her recommendation during trial and present the recommendation in the form of closing argument based on the evidence.

■■ [¶ 25] We further clarify our holding in *Clark* by addressing the father's argument that, had the GAL not testified as to the bases of her recommendation, the children would have been required to testify as witnesses. *Clark* requires attorneys/guardians ad litem to present competent evidence as necessary to support their recommendations based on the best interests of the children. Recommendations can then be presented to the courts through closing arguments based on the evidence received. 953 P.2d at 154. As we stated in *Clark, id.*:

> This is not to say that the attorney/guardian ad litem may not submit a written report to the parties. A detailed report which timely informs the parties of the relevant facts and the basis of the guardian ad litem's recommendation may facilitate agreement prior to trial. If the parties so stipulate, the report may be presented to the court. However, the report should not be filed with the court or received into evidence without the express agreement of the parties.

As a result, well considered recommendations, particularly when unconventional custody arrangements are being considered, demand the guardians ad litem make more probing inquiries to ensure the trial courts are presented with all the relevant factors. Thorough investigations will usually reveal a number of resources available to develop recommendations absent a child's testimony. These resources include relevant expert psychological evidence, if necessary, and testi-

mony of others familiar with the parents and children, such as teachers, pediatricians, counselors, or friends.

[¶ 26] As a final point, we take this opportunity to summarize what is expected of attorneys/guardians ad litem appointed by the courts to represent the best interests of the children involved.[5] A guardian ad litem, counsel, and the court should work together at the beginning of a case to develop and articulate clearly the scope and nature of the guardian ad litem's responsibilities. Full investigations of the facts relevant to custody should be completed by the guardian ad litem, including interviewing witnesses deemed appropriate by the guardian ad litem, custody evaluators, if any, counselors, teachers, relatives, and friends. Based on the evidence, input from any experts, and their own best judgment, the guardians ad litem will develop their recommendations concerning custody. They should communicate with the parents' counsel, preferably in writing, regarding the proposed recommendations sufficiently in advance of trial to allow them to prepare evidence in response to the recommendations. If the parties agree, those recommendations should be provided to the court prior to trial. To fulfill their obligations to the children they represent, guardians ad litem must take the necessary steps to assure sufficient evidence is present-

ed at trial either by introducing the evidence themselves or assuring counsel for one or both parents are prepared to do so. Finally, guardians ad litem should present their recommendations to the court in the form of closing argument and not through personal testimony. We recognize fully that often guardians ad litem are not handsomely compensated for their work. However, performing these outlined duties is required to fulfill their professional responsibility. We also recognize that guardians ad litem are often not paid at all. In order to ensure the highest devotion by guardians ad litem to their work, some district judges are currently requiring each party to pay a deposit at the commencement of an action which assures the guardian ad litem's fee is paid in a timely and appropriate manner. Any excess or deficiency caused by the deposit is then apportioned at the conclusion of an action. We recommend that practice to all district courts.

[¶ 27] Reversed and remanded for proceedings consistent with this opinion.

---

**5.** These resources may be beneficial to the Wyoming State Bar: 2 Sandra Morgan Little, Child Custody & Visitation Law and Practice ch. 12A (2000); 3 Arnold H. Rutkin, Family Law and Practice ch. 32 (2000); Linda D. Elrod, Child Custody Practice and Procedure ch. 12 (1997 & Supp.2000); and Philip Michael Stahl, Conducting Child Custody Investigations—A Comprehensive Guide (1994).