2004 WY 124

**Steven P. SIMS, Appellant (Defendant),**

v.

**Cynthia S. DAY, f/k/a Cynthia S. Sims, Appellee (Plaintiff).**

**No. 03–198.**

Supreme Court of Wyoming.

Oct. 28, 2004.

Representing Appellant: Mike Cornia, Evanston, Wyoming.

Representing Appellee: Farrah L. Fraughton of Harris Law Firm, P.C., Evanston, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] In this case, we must consider whether the district court abused its discretion when it granted an attorney's motion to withdraw without adhering to the mandatory requirements of Uniform Rules for District Courts 102(c). After his attorney withdrew, Appellant Steven P. Sims requested a continuance to obtain substitute counsel, but that request was denied. Sims challenges that denial as an abuse of discretion. Unrepresented at a show cause hearing, Sims' visitation with his daughter was modified, he was found in contempt for failing to pay child support, and attorney's fees were awarded. Sims contends that he was denied due process when the trial court decreased his visitation with his daughter by one third without notice at a hearing that was limited to consider whether he was in contempt for failure to timely satisfy a child support judgment against him.

[¶ 2] We hold that although the requirements set forth in Rule 102(c) are mandatory, district courts do have the discretion to vary from its requirements to control the course of litigation and avoid unwarranted delays when continuing without substitute counsel would not violate a substantial right of the client and no prejudice would result. Under the particular circumstances of this case, however, we hold that the district court abused its discretion by not adhering to Rule 102(c)'s requirements because it allowed Sims' attorney to withdraw on the eve of trial without either notifying the district court that substitute counsel would enter an appearance or providing the district court with Sims' statement that he would proceed pro se. No showing of extraordinary circumstance was made justifying the grant of the motion to withdraw. Denying Sims' request for a continuance to allow him to obtain substitute counsel, the district court proceeded to hearing and issued a child custody modification that is unsupported by the evidence. We therefore find that Sims has carried his burden of proving that a substantial right was violated and he was prejudiced. We reverse the judgment of the district court and remand for a new hearing.

## ISSUES

[¶ 3] Sims presents this statement of the issues:

I. Did the trial court abuse its discretion when it ordered that appellant's counsel be allowed to withdraw one business day before his hearing?

II. Did the trial court's denial of appellant's request for continuance to obtain new counsel after allowing withdrawal [one business day] prior to the hearing require reversal?

III. [Was] the appellant denied due process when the trial court decreased his visitation by one third at a show cause hearing?

Appellee Cynthia S. Day (Day) rephrases the issues as follows:

I. Did the district court abuse its discretion in allowing appellant's counsel to withdraw prior to hearing and denying appellant's request for a continuance?

II. Did the district court abuse its discretion when it modified appellant's visitation rights?

## FACTS

[¶ 4] During their marriage, Sims and Day had one child. When the parents sepa-

rated, they negotiated an agreement for joint custody with Day having primary physical custody and Sims receiving substantial visitation of seventy-two hours per week in lieu of standard visitation. This stipulated agreement was incorporated in their divorce decree entered on May 13, 1999, and reads as follows:

> At least Seventy-two (72) hours of visitation each and every week, said visitation to take place when Defendant is not working at his place of employment, such visitation is in lieu of "standard" weekend visitation as normally awarded by this Court, as Defendant normally works during the weekend; such visitation is also in lieu of the "standard" holiday and summer visitation as normally awarded by this Court, as Defendant, under this decree, shall have visitation each and every week.

On January 3, 2003, Day filed a petition to modify visitation to a standard schedule and to seek an order to show cause why Sims should not be held in contempt for child support arrearages. On January 9, 2003, the district court entered an order to show cause and setting hearing. Sims' attorney filed a counterpetition, and the show cause hearing was continued while negotiations were conducted.

[¶ 5] After representing Sims since February of 2003, and having secured a continuance for a show cause hearing to Monday, July 7, 2003, Sims' attorney filed a motion to withdraw on July 1, 2003. He mailed a copy of that motion to his client and the next day, July 2, the district court signed an order allowing the attorney to withdraw from the case. On July 3, 2003, Sims received his mailed copy of his attorney's motion to withdraw. Sims contends that he was not afforded notice of the motion in accordance with the rules of civil procedure before it was granted and was not notified that the order was entered. A national holiday and the weekend intervened and early on Monday, Sims found himself in front of the district court requesting a continuance to find substitute counsel. That request was denied.

[¶ 6] The proceeding had been noticed as a "show cause" hearing; however, the district court proceeded with a hearing on the combined issues of modification and contempt. In less than one page of transcript record, the issue of material change of circumstances was decided when the district court asked Sims whether he agreed that his child was now five years old and of school age. Sims agreed, and the district court summarily determined "that to be a material change in circumstances" and advised Sims that he would be losing hours of visitation.

[¶ 7] Sims objected to the drastic loss of visitation that would result from a standard visitation schedule, but that objection was overruled. Neither Sims nor the district court addressed any evidence supporting modification of a stipulated visitation agreement. Sims proposed that he be allowed to maintain reduced weekly visitation, but the district court summarily rejected Sims' alternative visitation proposal.

[¶ 8] The district court then considered contempt and, after advising Sims that he could be jailed if found in contempt, the district court found him in contempt and ordered an arrearage amount. Sims contends that the amount determined is not supported by the record. The record shows that Sims agreed that there was no "factual issue whether [he had] missed paying the $140 a month totaling $4480." Day contends that the record shows that the $4,480 represents an arrearage of daycare expenses of $140 per month from January 1, 2000, through August 31, 2002, and, because Sims did not dispute the amount, no evidence was necessary. After the hearing, orders were entered for payment of arrearage, modification of visitation, and an award of Day's attorney fees. This appeal followed.

## DISCUSSION

### Abuse of Discretion

[¶ 9] Sims first claims the district court abused its discretion when it allowed Sims' counsel to withdraw one business day before his hearing. Because the mandatory language of Uniform Rules for District Courts 102(c) is at issue, Sims contends that our review should be *de novo*; however, he concedes that under long standing precedent, our review of motions to withdraw and for a

continuance is the abuse of discretion standard. *Byrd v. Mahaffey*, 2003 WY 137, ¶ 5, 78 P.3d 671, ¶ 5 (Wyo.2003). Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Ready v. Ready*, 2003 WY 121, ¶ 11, 76 P.3d 836, ¶ 11 (Wyo.2003); *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998). "We must ask ourselves whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious." *Ready*, ¶ 11 (citing *Johnson v. Johnson*, 11 P.3d 948, 950 (Wyo. 2000)).

[5] [¶ 10] Rule 102(c) provides:

Counsel will not be permitted to withdraw from a case except upon court order. Except in the case of extraordinary circumstances, the court shall condition withdrawal of counsel upon the substitution of other counsel by written appearance. In the alternative, the court shall allow withdrawal upon a statement submitted by the client acknowledging the withdrawal of counsel for the client, and stating a desire to proceed pro se. An attorney who has entered a limited entry of appearance shall be deemed to have withdrawn when the attorney has fulfilled the duties of the limited entry of appearance.

As Sims notes, the rule's requirement that withdrawal be conditioned upon either substitution of other counsel or a client's statement of a desire to proceed pro se was not followed in this case. Under our general rule, language in a rule that prohibits a certain act is mandatory language "to refrain altogether from doing the forbidden act." *Wyoming State Treasurer v. City of Casper*, 551 P.2d 687, 699 (Wyo.1976). We have previously determined that the use of the term "shall" in a procedural rule is generally mandatory. *Loghry v. Loghry*, 920 P.2d 664, 668 (Wyo. 1996). *Loghry* stated that "[o]rderly judicial administration is dependent upon procedural rules, and in order to assure uniform and timely disposition of appeals they must be enforced and not relaxed or changed at the whim of any court." *Id.* (quoting *Mayland v.*

*State*, 568 P.2d 897, 899 (Wyo.1977)) (emphasis omitted). *Loghry* held that reasonable adherence to the rules of the court is necessary to the proper administration of justice. 568 P.2d at 668 (*citing Mayland*, 568 P.2d at 899). We find further support for our interpretation because Rule 102(c) was changed to its present form in March of 1993, with a minor amendment in 2002, following our decision in *Carlson v. Carlson*, 836 P.2d 297 (Wyo.1992). That decision noted that substitute counsel was preferred but did not require it because the former version of the rule did not mandate substitute counsel:

The district court entered its order before replacement counsel had entered an appearance which is not a favored practice. Rule 102(c) of the Uniform Rules for the District Courts of the State of Wyoming provides "[c]ounsel will not be permitted to withdraw from a case except upon court order." In contrast, Rule 19.02 of the Wyoming Rules of Appellate Procedure provides "[n]o attorney or firm who has appeared in a cause on appeal may withdraw from it without written consent of the court filed with the clerk. Such consent may be conditioned upon substitution of other counsel." The Uniform District Court Rules do not require that substitute counsel be obtained before the court allows withdrawal of an attorney. However, a better practice, and one that will avoid the difficulties here presented, would be to condition withdrawal on substitution of new counsel. This practice would avoid the waste of time and resources that may occur in a case such as this. Nevertheless, the order permitting withdrawal of appellant's attorney was permissible under the rules for district courts.

*Id.* at 302 (alterations in original).

[6] [¶ 11] Requiring substitute counsel remains our preference, and the rule's language now mandates it when the client desires it. Therefore, the rule does not allow counsel to withdraw except upon court order after the court is informed of substitution of counsel or the court is informed by the client of a desire to proceed pro se. The district court's failure to adhere to the rule's mandate is error and reversible if a substantial

right of Sims has been violated to his prejudice. Alternatively, the district court's order can be affirmed if extraordinary circumstances were present that permitted an exception to the rule. Here, the attorney's motion to withdraw stated reasons but made no assertion that those reasons amounted to extraordinary circumstances. At the hearing, the district court used those stated reasons as justification for denying Sims' motion for a continuance to obtain substitute counsel, stating:

> THE COURT: We've had this matter set since last ... since, you know, early this year. Your attorney withdraws, seeks to withdraw last week saying that representation has been rendered unreasonably difficult by the client—due to the client's neglect in communicating and complying with requests of Counsel. The below signed has afforded the client a reasonable amount of time to obtain substitute counsel. And you come in here today asking for an attorney.
>
> MR. SIMS: Well, I found out on the 3rd of July I didn't have an attorney.
>
> THE COURT: Well,—
>
> MR. SIMS: And he—
>
> THE COURT:—your request is denied. We're going ahead. And this is not a difficult thing. I don't know exactly what the original decree provided. It had—was it—I'll have to look at it from the standpoint of the—to me, the easy issue is clarifying the visitation schedule.

[¶ 12] In *Byrd v. Mahaffey*, similar reasons as part of many more facts were found to constitute extraordinary circumstances; however, considering all of the facts, *Byrd* is significantly different from this case:

> Byrd was extended notice concerning his counsel's motion to withdraw. The withdrawal hearing was held days before the actual trial date, and Byrd was provided notice of the pending trial date many months in advance. Further, although the record before this [C]ourt is limited, it does indicate that Byrd knew of his counsel's withdrawal prior to the trial date because he filed a motion for a continuance and appeared at trial with his file that he had obtained from his withdrawn counsel.

> Byrd was also allowed to participate in the trial representing his own interests after the district court denied his motion for continuance.

*Byrd,* ¶ 23.

[¶ 13] In this case, Sims was not extended notice concerning his counsel's motion to withdraw; there was no withdrawal hearing, and Sims was not notified of the withdrawal order. The purpose of a hearing is to establish facts from allegations made after both sides are heard. The facts in *Byrd* were established by Byrd's opportunity to appear at his hearing whereas Sims was not afforded that opportunity and the statement of Sims' attorney remain mere allegations despite the fact that they formed the basis for the district court's denying Sims' motion for a continuance to obtain substitute counsel. Although Sims has now appeared before the district court about the allegations, the exchange quoted above indicates that Sims was not afforded the opportunity to be heard at that point. As such, the allegations have not been established as fact and cannot form the basis for extraordinary circumstances. We turn now to whether Sims' substantial rights were violated to his prejudice.

**Prejudice**

[¶ 14] Sims asserts that the denial of his motion for a continuance prejudiced him because the district court proceeded although Sims had no notice his counsel had withdrawn, the nature of the hearing changed from a simple show cause to a modification hearing, and because the district court misstated the issue as simply clarifying the visitation schedule. Day contends that Sims' actions are to blame for the withdrawal of his attorney and, because Sims did not object when the district court considered modification, he cannot now raise that issue for the first time on appeal. We view Sims' contentions as a general claim that the court's denial for a continuance denied him due process to notice and a meaningful opportunity to be heard.

[¶ 15] Our settled rule states that the withdrawal of an attorney does not entitle the party to a continuance if he creat-

ed the situation and an unwarranted delay of judicial proceedings would occur. *Byrd,* ¶¶ 6, 8. Looking to the time of the request for a continuance, we review all of the particular circumstances to determine if the district court abused its discretion. *Id.* at ¶ 7. A court abuses its discretion if an arbitrary refusal denies due process. *Id.* Sims has the burden to prove a violation of due process and prejudice. *Id. Byrd* holds that due process issues created by a violation of Rule 102(c) and presented for the first time on appeal will be considered by this Court. *Id.* at ¶¶ 10, 11. "Parents are entitled to due process in custody and visitation matters, which includes adequate notice and an opportunity to be heard." *Jackson v. Jackson,* 961 P.2d 393, 395 (Wyo.1998) (quoting *Matter of SAJ,* 942 P.2d 407, 409 (Wyo.1997)).

> One of the basic elements of due process is the right of each party to be apprised of all the evidence upon which an issue is to be decided, with the right to examine, explain or rebut such evidence. And the right to hear and controvert all evidence upon which a factual adjudication is to be made includes the right to hear and cross-examine witnesses.

*Jackson,* at 396 (quoting *Matter of SAJ,* at 410).

[¶ 16] Here, the district court believed that the modification request was a simple issue that could be resolved by adopting and clarifying standard visitation. This view resulted in the court's summarily deciding that a substantial change in circumstances existed that justified modifying Sims' substantial visitation which had been negotiated and stipulated to in the divorce decree. We acknowledge that we have previously held that even in a proceeding that may have been limited to a contempt proceeding, the district court has the discretion to modify child custody matters. *Ready v. Ready,* 906 P.2d 382, 386 (Wyo.1995) (citing *Gaines v. Doby,* 794 P.2d 566, 569–70 (Wyo.1990); *Wardle v. Wardle,* 464 P.2d 854, 856 (Wyo. 1970) (in child custody modification matters the district court possesses inherent equitable powers independent of its statutory revisory power); and *Marquiss v. Marquiss,* 837 P.2d 25, 42–43 (Wyo.1992) (the district court

has the right to terminate a parent's custody based upon contempt for noncompliance with existing decree provisions for visitation)). Nevertheless, when proceeding to modify a decree, the district court cannot modify to punish the offending parent in contempt but must act to achieve its goal of serving the best interests of the child and striving to achieve a reasonable balance between the rights and affections of the parents. *Ready,* at 863 (citing *Marquiss,* at 45).

[¶ 17] While we recognize these inherent powers, the district court abuses its discretion when it modifies visitation without evidence that Day proved that a change in circumstances affecting the child's welfare has occurred after the entry of the initial decree, that the change warrants modification of the decree, and that the modification will be in the best interests of the children. *Ready,* 906 P.2d at 385 (quoting *DJG v. MAP,* 883 P.2d 946, 947 (Wyo.1994)) (citing *Goss v. Goss,* 780 P.2d 306, 312–13 (Wyo. 1989), and *Ayling v. Ayling,* 661 P.2d 1054, 1056 (Wyo.1983)). Our review of the record shows that the hearing was so abbreviated that the district court could not reasonably conclude that evidence had been presented of such a change warranting modification or that modification would be in the best interest of the child. In neither the transcript nor the order modifying visitation did the district court reference evidence that the best interests of the child required its decision. Under these circumstances, we must find that Sims has been prejudiced by the denial of the continuance. This case is reversed and remanded for further proceedings.

KITE, J., dissenting.

[¶ 18] I disagree with the conclusion of the majority opinion that the district court abused its discretion when it denied Mr. Sims' request for a continuance and proceeded to modify the custody order and find him in contempt. While the hearing in this case was admittedly short and the court's explanation for its actions was somewhat minimal, the entire record reflects the district court had over a year's experience with Mr. Sims and his numerous failures to comply with

previous orders and settings. In addition, a certain urgency existed for the court to address the issue of custody because the start of school was approaching. While it certainly would have been preferable for Mr. Sims to have appeared with substitute counsel, the problems he had with his attorney were of his own making and the district court retained wide discretion to assess the situation and determine whether extraordinary circumstances existed which allowed the matter to go forward without substitution of counsel.

[¶ 19] The decree of divorce was entered May 13, 1999. On April 6, 2001, the State filed a motion for an order to show cause alleging Mr. Sims had failed to make any child support payments and was in arrears $1,659.56. The court set a hearing on the State's motion for July 11, 2001. Indicating the parties were trying to resolve the matter, the State sought a continuance of that hearing and it was reset for August 9, 2001. Because Mr. Sims made "a child support payment", the State asked that the hearing be vacated, and it was. The State, Mr. Sims and Ms. Day then entered into a stipulation to modify the child support order in which Mr. Sims agreed to make the originally ordered $290 per month payment and an additional $60 which would be applied to the amount in arrears and the court entered an order consistent with that stipulation on September 10, 2002. Mr. Sims again failed to make any of the payments to which he had stipulated, and on December 19, 2002, the State again filed a motion for an order to show cause as to why he should not be held in contempt. That matter was set for a hearing on January 22, 2003. In the meantime, however, Ms. Day filed a petition to modify the decree, together with a request that Mr. Sims be held in contempt for failing to make child support payments. The January 22, 2003, hearing was then continued to allow Mr. Sims' new counsel time to prepare and conduct discovery on the claims asserted by Ms. Day's petition. On May 28, 2003, the district court entered an order setting the matter for hearing on July 7, 2003. One month later, Mr. Sims' counsel moved to withdraw stating his client had made representation "unreasonably difficult" and represented he had given his client reasonable notice to obtain substitute counsel.

[¶ 20] The district court was faced with this record when it considered Mr. Sims' claim at the July 7, 2003, hearing that he had only received notice on July 3 that his counsel was withdrawing. We recognized in *Byrd v. Mahaffey*, 2003 WY 137, ¶ 14, 78 P.3d 671, ¶ 14 (Wyo.2003) that in determining whether extraordinary circumstances exist within the meaning of U.R.D.C. 102(c) many jurisdictions, including Wyoming, consider the actions of the appellant, whether these actions contributed to the situation at hand, and weigh the appellant's right to counsel against the prompt administration of justice. We also recognized that the trial court is better able to judge the matter, is more conversant with local conditions, the status of the docket, and the capacity and disposition of counsel, and is more familiar with the background and general setting of the situation, which is frequently not apparent in the formal record. Given these considerations, I would hold that the circumstances supported the district court's finding that Mr. Sims was undeserving of an additional continuance, that "extraordinary circumstances" existed and substitute counsel was not required by the rules.

[¶ 21] I also disagree with the majority's conclusion that Mr. Sims was prejudiced by the withdrawal of his counsel and the denial of his last request for a continuance such that he was denied due process and an opportunity to be heard. While Mr. Sims' testimony was brief with regard to his preference for visitation, the district court did provide him an opportunity to present his argument. He did not dispute the fact that his daughter was going to be starting school or that the court should consider that fact in deciding whether custody should be modified. We do not have the benefit of full explanation by the district court of the reasons for its finding of a material change of circumstances. We have said,

> when a trial court is exercising its discretionary power in custody matters, it should place on the record the circumstances and factors which were crucial to the determination. The court should further spell out

its reasons so counsel and the reviewing court can understand and evaluate the soundness of the decision.

*Pace v. Pace*, 2001 WY 43, ¶ 15, 22 P.3d 861, ¶ 15 (Wyo.2001). Particularly detailed findings are paramount where unconventional custody orders are involved. *Id.* The present case did not involve an unconventional custody order and it is clear from the record that the factors crucial to the district court's determination were the child's age and the fact that she was starting school. This record contains sufficient facts to support a finding that a material change of circumstances occurred and the child's interests were best served by a stable custody arrangement while she was attending school.

[¶ 22] I would affirm the district court's modification of the divorce decree.