# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 55

**APRIL TERM, A.D. 2023**

**June 6, 2023**

AMY ELISE EVANS
f/k/a AMY ELISE SHARPE,

Appellant
(Plaintiff),

v.

SPENCER STEVEN SHARPE,

Appellee
(Defendant).

S-22-0244

*Appeal from the District Court of Albany County*
*The Honorable Bobbi Dean Overfield, Judge*

*Representing Appellant:*
Christopher J. King, APEX Legal, P.C., Worland, Wyoming.

*Representing Appellee:*
Linda J. Steiner and Abigail E. Fournier, Steiner, Fournier & Zook, LLC, Cheyenne, Wyoming.

*Guardian ad Litem:*
Alaina M. Stedillie, Crowley Fleck PLLP, Casper, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]     Amy Elise Evans (Mother) appeals from the district court's order finding her in contempt and modifying the divorce decree.  Mother asserts the district court erred when it found her in contempt of court.  She also argues the district court abused its discretion when it found a material change in circumstances and modified the decree to change provisions related to travel, limit her discretion to restrict visitation, and limit her discretion in health care decision making.  Finally, Mother contends the district court erred when it made credibility findings concerning the guardian ad litem and in failing to address child support in its order.  We affirm in part and reverse in part.

### ISSUES

[¶2]     We rephrase the issues:

> 1.     Did the district court abuse its discretion when it determined clear and convincing evidence supported finding Mother in contempt of court?
>
> 2.     Did the district court abuse its discretion when it modified the terms of the divorce decree?
>
> 3.     Did the district court commit reversible error when it entered findings about the credibility and neutrality of the guardian ad litem?
>
> 4.     Did the district court abuse its discretion when it did not order a change in child support?

### FACTS

[¶3]     Mother and Spencer Steven Sharpe (Father) married in 2010.  They had two children, EMS, born in 2011, and JES, in 2013.  They divorced in July 2018.  The parties stipulated to the terms set forth in their divorce decree.  The decree provides for shared joint legal and residential custody, with a 2-2-3 weekly alternating schedule, alternating holidays and birthdays.  The decree also specifies, "Changes to the visitation schedule may be made at Mother's reasonable discretion."  It grants Mother "final decision-making authority" on "major decisions" and "day-to-day decisions."  The decree required the parties' communications to be "child-centric, . . . productive, business-like and respectful" and provided that "Neither parent owes child support to the other."

[¶4]     The visitation schedule set forth in the divorce decree worked for the parties until January 2020, when Father started sending Mother antagonistic and troubling text

1

messages. The texts are numerous and lengthy, but include the following message from Father to Mother which also referenced Father's parents:

> What I'm trying to say is that deep deep down there is still hatred for each of you. I f*cking hate you three hypocrites and I hate myself more. For years I've despised you. You hurt my daughters and you don't even know it. You have no right to call yourselves Christians, no right to preach, to lecture or to judge anyone. I don't want to live with this hatred anymore, and I'm not going to do you the satisfaction of killing myself. Not by drinking, smoking, or any other self-destructive means. . . .

[¶5] Mother described the texts as "aggressive and mean to me" and Father's "mom . . . dad, [and] his brothers and sisters." She also interpreted some of these messages as an "indicat[ion Father] was suicidal." Mother testified that these texts, a series of others similar in nature, and her perception that Father could be suicidal, prompted her to limit Father's visitation in January 2020—a decision that she understood to be within her discretion.

[¶6] She suspended visits with Father from that time (mid-January 2020) through the end of March 2020, a period of approximately eight to ten weeks. Mother testified that she refused to let the children travel to Ireland with Father on a work-related trip because she would have had to accompany the children to Ireland and one of the children would have had to fly back alone. She also explained that she denied a request by Father to take the children to the Bahamas because they were attending school at the time. Mother took the children to Hawaii in March 2020, prior to the state's COVID-19 lockdown, but refused a second request to allow the children to travel with Father to the Bahamas at a later date because the U.S. Center for Disease Control had issued travel restrictions to the country. Visitation resumed after Father saw a psychiatrist, took a drug test, and seemed to "level out."

[¶7] In February 2021, JES was diagnosed with a brain tumor and seizure disorder. The parties diligently sought care for JES and consulted doctors at Children's Hospital Colorado, MD Anderson, St. Jude's Children's Hospital, and the Mayo Clinic. JES was prescribed anti-seizure medication, which she takes twice daily to prevent seizures. She continues to see physicians at Children's Hospital Colorado to monitor her condition. JES's diagnosis and treatment have impacted EMS. Testimony is undisputed that EMS often feels overshadowed by the attention necessarily given to JES because of her illness.

[¶8] It is uncontested that the parents have a hostile relationship. JES's medical issues have fueled the tension between the parties. They argue about doctor appointments and treatment options. Mother testified that Father had volunteered to take JES to a neurologist

2

appointment in Denver, but then failed to pick her up, resulting in a missed appointment. Mother also testified Father changed the contact information in JES's medical records from Mother to Father resulting in Mother not receiving test results and missing calls from physicians. Father testified changes to the contact information were made inadvertently. Mother also testified that when she attended appointments without Father, he would text her repeatedly (once every minute or two for over an hour), making degrading and demoralizing comments.

[¶9]    According to Mother, when JES was first diagnosed, and decisions were being made about how they would proceed with treatment, Father suggested that her treatment should include "weed, private ukulele lessons, and a private chef." Father explained that he had investigated marijuana as an alternative to the anti-seizure medication, which he thought made JES "listless and sullen." He disclosed that he had also considered "imaginal therapy," therapy which asks the patient to "become imaginative about the tumor going away," but Mother "shut [that] down."

[¶10] Mother, concerned about the children's safety and JES's need for a consistent schedule as a result of her diagnosis, exercised her discretion to limit visitation a second time in late February or early March 2021.

[¶11] Father agreed to Mother's modified visitation schedule until the end of that school year. Between February and May 2021, Father had isolated, but numerous visits with the children. He also attended JES's medical appointments. In June 2021, Mother declined Father's requests to take the children to his grandfather's funeral in Lander, Wyoming, but the children attended the funeral with Father's parents. A week later, Mother denied Father's request to take the children to his grandmother's celebration of life in Haxtun, Colorado. After school ended, in July 2021, Mother attempted to schedule regular supervised visits. Father responded to Mother's initial efforts with an offer to turn his house into a café and a proposal for the two of them to go into business together. Mother and Father hired a counselor.

[¶12] In December 2021, after working with the counselor, Mother and Father agreed to return to the visitation schedule in the decree. On March 1, 2022, after coming home from a weekend with Father, JES exhibited signs of a seizure. Mother took her to the hospital in Laramie. Mother repeatedly texted and e-mailed Father that night and the next day to determine whether he had given JES her medication. Father did not respond. JES was transported to Children's Hospital in Denver and Mother continued her efforts to contact Father, telling him if JES had not missed doses, the doctors "want to up her dosage . . . [p]lease let me know as soon as you are able." Eventually Father responded, but never indicated whether he had or had not given JES her medication. It is Mother's position that Father repeatedly failed to give JES her medication, at least in part because he disagrees with medicating her. Father testified that he understands the importance of the medicine and that he missed "less than five" doses.

3

[¶13]   In April 2021, after learning Father had failed to administer prescribed doses of anti-seizure medication to JES, Father had allowed JES to go out alone and unsupervised at night,[1] and in response to Father's continuous erratic and abusive texts, Mother filed a petition to modify custody, seeking sole legal and primary residential custody of the children.   In July 2021, Father filed a separate petition to modify custody.   He sought primary physical custody and decision-making authority.   Father also filed a motion to hold Mother in contempt for withholding visitation and for refusing his requests to travel with the children.   Father later filed a motion to hold Mother in contempt for failing to return his medical records.[2]   The court appointed a guardian ad litem (GAL) in August 2021.

[¶14]   Following a two-day bench trial in April 2022, the district court found Mother in contempt for unreasonably withholding visitation, unreasonably denying Father's requests to travel with the children, and failing to return Father's medical records.   Regarding the petitions to modify custody, the district court found modification was justified by a material change in circumstances and ordered changes to the decree, which are more fully discussed below.   Mother appeals.

## DISCUSSION

I.   *Did the district court abuse its discretion when it determined clear and convincing evidence supported finding Mother in contempt of court?*

[¶15]   The district court found Mother in contempt for unreasonably withholding visitation, for unreasonably denying Father's requests to travel with the children, and for failing to return Father's medical records.   Mother challenges only the finding of contempt for withholding visitation.   She contends that the district court abused its discretion when it determined she acted unreasonably.   Mother asserts that her decision to limit Father's visitation was based on a number of facts, was reasonable, and in accord with the terms of the divorce decree.

A.   **Standard of Review**

[¶16]   In the district court a "civil contempt order must be supported by clear and convincing evidence.   Clear and convincing evidence is 'evidence that would persuade a finder of fact that the truth of the contention is highly probable.'" *JLK v. MAB*, 2016 WY

---

[1] Father testified that he allowed JES to go alone to Prexy's Pasture, on the University of Wyoming campus, at 7 p.m. in December, when it was dark outside.   He felt that because she took a walkie-talkie she would be able to communicate with him if there was an emergency.

[2] In that motion, Father also alleged that Mother failed to notify him of the children's activities.   The district court found "Father presented minimal if any evidence to support his claim" and that Mother "presented substantial evidence to support her efforts to keep Father informed."   The district court did not find Mother in contempt on this issue.

73, ¶ 20, 375 P.3d 1108, 1113 (Wyo. 2016) (internal citations omitted) (quoting *Bullock v. Bullock*, 2014 WY 131, ¶ 17, 336 P.3d 136, 141 (Wyo. 2014)).

[¶17]   Our standard of review in contempt proceedings involving child custody matters "is lenient." *Heimer v. Heimer*, 2021 WY 97, ¶¶ 16–17, 494 P.3d 472, 477–78 (Wyo. 2021). "This Court does not interfere with an order holding a party in civil contempt of court in a domestic relations case 'absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion.'" *Heimer*, ¶¶ 16–17, 494 P.3d at 477–78 (citations omitted); *see also Rigdon v. Rigdon*, 2018 WY 78, ¶ 14, 421 P.3d 1069, 1073–74 (Wyo. 2018). "In reviewing the exercise of a district court's broad discretion under its contempt powers, we must determine whether the court reasonably could have concluded as it did." *Rigdon*, ¶ 14, 421 P.3d at 1073–74 (citations omitted); *see also Zupan v. Zupan*, 2010 WY 59, ¶¶ 36–37, 230 P.3d 329, 339 (Wyo. 2010).

## B.   Analysis

[¶18]   Our analysis turns not on whether Mother exercised reasonable discretion, but on whether the district court erred when it concluded Father established all the elements of contempt.

[¶19]   Addressing visitation, the district court found:

> As it relates to Father's claim that Mother unreasonably withheld his parenting time, the prior decree provides that "[c]hanges to the visitation schedule may be made at Mother's reasonable discretion." Although the language of the decree provides Mother with discretion, that discretion must be reasonable. Based on the evidence presented at trial, the Court finds Mother was unreasonable and abused her discretion under the prior decree by denying Father any significant visitation for such a lengthy period of time starting in February 2021. With the exception of a few hours at a time at a park, Father was given minimal supervised visitation and precluded from unsupervised visitation with his children for over ten months. Mother gave minimal basis for withholding Father's parenting time and gave no provisions or remedies for Father to correct the situation. Father did not help the situation but rather added fuel to the fire with his obsessive, erratic, and unnecessary emails and texts. Father's communications made Mother's decision to withhold his parenting time almost plausible. Not thinking or understanding that these messages lent support to Mother's opinion that he was mentally ill or potentially abusing a substance, it is possible that Father

5

believed harassing Mother would somehow get her to agree with him. Father needs to learn those behaviors are not appropriate or helpful to his cause.

The Court does not find the emails or texts rise to the level warranting Mother to preclude the children's regular time with Father for almost eleven months. The same is true for the evidence related to the missed medication and the Prexy's Pasture incident. The Court finds Mother in contempt for her abuse of discretionary power to withhold Father's parenting time for a purpose and time frame the Court deems unreasonable under the circumstances.

[¶20] Wyo. Stat. Ann. § 20-2-204 provides:

**Enforcement and modification.**

.    .    .

(b)    A court having jurisdiction under W.S. 20-2-203 may, upon appropriate motion of a party, require a parent to appear before the court and show just cause why the parent should not be held in contempt, upon a showing that the parent has willfully violated an order concerning the care, custody and visitation of the children. In order to enforce and require future compliance with an order the court may find that the parent is in contempt of court, award attorney's fees, costs and any other relief as the court may deem necessary under the circumstances to the party aggrieved by the violation of an order.

Wyo. Stat. Ann. § 20-2-204(b) (LexisNexis 2021).

[¶21] To support a civil contempt order, a district court must find that the party asserting contempt proved by clear and convincing evidence that: 1) an effective court order "required certain conduct by the alleged contemnor; 2) the contemnor had knowledge of the order; and 3) the alleged contemnor disobeyed the order." *Kleinpeter v. Kleinpeter*, 2017 WY 76, ¶ 10, 397 P.3d 189, 193 (Wyo. 2017) (quoting *JLK*, ¶ 20, 375 P.3d at 1113). Regarding "the third element, that the contemnor disobeyed the order, the party asserting contempt must prove not only a failure to comply with the order, but also that the violation was willful. In order to find a willful violation, the order violated must be 'clear, specific and unambiguous.'" *Id.* ¶ 11, 397 P.3d at 193 (internal citations omitted) (quoting *JLK*, ¶ 21, 375 P.3d at 1113). "Once these elements are proven, the burden shifts to the person

charged with contempt to show he or she was unable to comply." *Id.* ¶ 10, 397 P.3d at 193 (quoting *JLK*, ¶ 20, 375 P.3d at 1113).

[¶22]   Before there can be a willful violation of a court order, there must be a valid court order which is clear, specific, and unambiguous.   "An order on which a judgment of contempt is based must be clear and unambiguous, and must spell out the details of compliance in clear, specific and unambiguous terms so that the person will readily know exactly what duties or obligations are imposed on him." *Crites v. Alston*, 837 P.2d 1061, 1069–70 (Wyo. 1992) (quoting *Cunningham v. Eighth Jud. Dist. Ct. of State of Nev., In & For Clark Cnty.*, 729 P.2d 1328, 1333–34 (Nev. 1986)).

[¶23]   Here the divorce decree stated:

> **Visitation:** Mother and Father agree to a 2-2-3 weekly alternating schedule.  Changes to the visitation schedule may be made at Mother's reasonable discretion.

Mother was given "reasonable discretion" to make changes to visitation.  The decree did not define reasonable.  It provided no guidance as to when in the exercise of her discretion Mother could limit visitation and it provided no direction on reinstating visitation after Mother used her discretion to limit it.  The decree granted Mother "final decision-making authority" on issues regarding the children:

> In the event the parties disagree on issues regarding the minor children, Mother shall have the final decision-making authority.

We agree with the district court that the decree imposed a duty on Mother to exercise "reasonable discretion."  The decree also provided Mother with expansive decision-making authority.  Mother's authority to change visitation and make final decisions was nearly unfettered.  When read as a whole, we do not agree that the decree was sufficiently "clear, specific, and unambiguous" such that Mother would have "readily known exactly what duties or obligations were imposed" on her. *See Crites*, 837 P.2d at 1069–70 (holding that divorce decree provision indicating that "Wyoming shall retain jurisdiction over the custody" of the child "cannot be construed as a clear, specific and unambiguous court order or decree.  Consequently, a 'violation' of [that provision], whether 'willful' or otherwise, cannot be enforced with the district court's contempt power."). *See Greene v. Finn*, 2007 WY 47, ¶ 14, 153 P.3d 945, 951 (Wyo. 2007) ("One of the controlling principles of law in contempt jurisprudence is that ambiguities in court orders 'redound to the benefit of the person charged with contempt.'" (quoting *Bard Ranch Co. v. Weber*, 557 P.2d 722, 733

7

(Wyo. 1976))). Because the decree was ambiguous, the district court's assessment of contempt was not justified.[3]

## II. *Did the district court abuse its discretion when it modified the terms of the divorce decree?*

[¶24] Mother argues the district court committed reversible error when it found a material change of circumstances justified modification of the divorce decree terms governing her decision-making authority regarding medical care, parenting time, and travel. She also contends that the district court "committed reversible error" when it modified the medical decision-making and decision-making authority regarding parenting time and travel terms of the decree.

### A. Standard of Review

[¶25] "We review a district court's decision on a petition to modify child custody for an abuse of discretion[.]" *Johnson v. Clifford*, 2018 WY 59, ¶ 8, 418 P.3d 819, 822 (Wyo. 2018) (citing *Bishop v. Bishop*, 2017 WY 130, ¶ 9, 404 P.3d 1170, 1173 (Wyo. 2017)). "[W]e will not disturb the decision absent a procedural error or a clear abuse of discretion." *Id.* (citing *Bishop*, ¶ 9, 404 P.3d at 1173). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Id.* (quoting *Bishop*, ¶ 9, 404 P.3d at 1173).

[¶26] "A district court does not abuse its discretion if it could reasonably conclude as it did." *Johnson*, ¶ 8, 418 P.3d at 822 (citing *Bishop*, ¶ 9, 404 P.3d at 1173). To determine whether the district court's decision was reasonable, "[w]e consider the evidence in the

---

[3] A decree that provides for reasonable visitation is not necessarily ambiguous and may in some circumstances support a finding of contempt. *See Kleinpeter*, ¶ 15, 397 P.3d at 194. There the district court held mother in contempt for denying father's supervised visits. On appeal, mother argued the following provision was too vague to be enforced through contempt: "[I]t is in the children's best interests to be placed in the legal and physical custody of [mother] with [father] having rights of reasonable visitation as agreed by both parties upon reasonable notice with the initial six months of visitation to be supervised by a third party[.]" *Id.* We found this provision was enforceable because "no provision in the [d]ecree allowed [m]other to unilaterally discontinue [f]ather's visitation." *Id.* ¶ 20, 397 P.3d at 195.

We have likewise observed that "[a] decree in which custody and visitation are disputed must provide more detail so that the parents each understand their obligations, and so the decree may be enforced by contempt sanctions should that regrettably become necessary." *IC v. DW*, 2015 WY 135, ¶ 21, 360 P.3d 999, 1005 (Wyo. 2015). *IC* was a paternity, custody, and visitation dispute. Father appealed a district court's order awarding custody to the mother as well as the court's visitation order. *Id.* ¶ 1, 360 P.3d at 1000–01. We upheld the award of custody but remanded for a more specific visitation order. We concluded, the order, which provided father at least monthly visitation and that visitation should be "flexible," was insufficient to promote the parties' understanding and compliance. *Kleinpeter*, ¶ 13, 397 P.3d at 193 (quoting *IC*, ¶ 20–21, 360 P.3d at 1005).

8

light most favorable to the district court's decision, 'affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.'" *Bishop*, ¶ 9, 404 P.3d at 1173 (quoting *Durfee v. Durfee*, 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo. 2009)). "This Court may not reweigh the evidence." *Ianelli v. Camino*, 2019 WY 67, ¶ 20, 444 P.3d 61, 66 (Wyo. 2019) (citing *Paden v. Paden*, 2017 WY 118, ¶ 13, 403 P.3d 135, 140 (Wyo. 2017)).

> Judicial discretion is not absolute, however:
>
> > Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.
> >
> > *Love v. Love*, 851 P.2d 1283, 1291 (Wyo. 1993) (quoting *Vanasse v. Ramsay*, 847 P.2d 993, 996 (Wyo. 1993)). "[I]n every case, the record must support the district court's determination that the modification is in the children's best interests through 'the proceeding transcripts, by opinion letter, or as findings in the written order' to allow appellate review." *Booth v. Booth*, 2019 WY 5, ¶ 22, 432 P.3d 902, 910 (Wyo. 2019) (quoting *Jackson v. Jackson*, 2004 WY 99, ¶ 15, 96 P.3d 21, 26 (Wyo. 2004)).

*Ianelli*, ¶ 21, 444 P.3d at 66–67.

## B. There was a material change in circumstances affecting the welfare of the children sufficient to modify the terms of the divorce decree.

[¶27]  Wyo. Stat. Ann. § 20-2-204(c) sets forth the statutory requirements for modification of custody and visitation orders:

> (c)  A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20-2-201(a).  In any proceeding in which a parent seeks to modify an order concerning child custody or visitation, proof of repeated, unreasonable failure by the custodial parent to allow visitation to the other parent in

9

> violation of an order may be considered as evidence of a material change of circumstances.

Wyo. Stat. Ann. § 20-2-204(c). Courts engage in a "two-step inquiry to determine whether modification of a custody and visitation order is appropriate." *Jacobson v. Kidd*, 2018 WY 108, ¶ 16, 426 P.3d 813, 820 (Wyo. 2018). The first step, a finding that there has been a material change in circumstances since the entry of the order in question, is a threshold requirement. *Bishop*, ¶ 11, 404 P.3d at 1173 (quoting *Hanson v. Belveal*, 2012 WY 98, ¶ 18, 280 P.3d 1186, 1193 (Wyo. 2012)). That is because a "district court does not properly acquire jurisdiction to reopen an existing custody order until there has been a showing of 'a substantial or material change of circumstances which outweigh society's interest in applying the doctrine of res judicata' to a custody order." *Id.* (quoting *Hanson*, ¶ 18, 280 P.3d at 1193). The second step requires a determination of whether a modification would be in the best interests of the child.[4] *Id.* (quoting *Hanson*, ¶ 18, 280 P.3d at 1193). Here Mother takes issue with the first step, the finding of a change in material circumstances.

[¶28] The party seeking modification must prove a material change of circumstances has occurred since entry of the governing order. *Bishop*, ¶ 12, 404 P.3d at 1173 (citing *In re TLJ*, 2006 WY 28, ¶ 11, 129 P.3d 874, 877 (Wyo. 2006)). To determine whether there has been a material change, "[t]he district court evaluates 'the current circumstances of the parties in relation to their circumstances at the time the prior custody order was entered.'" *Id.* (citations omitted). "[T]o be considered material and justify reopening the decree, the

---

[4] In determining the best interests of the child, courts consider the following factors:

    (i)     The quality of the relationship each child has with each parent;

    (ii)    The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

    (iii)   The relative competency and fitness of each parent;

    (iv)   Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

    (v)    How the parents and each child can best maintain and strengthen a relationship with each other;

    (vi)   How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

    (vii)  The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

    (viii) Geographic distance between the parents' residences;

    (ix)   The current physical and mental ability of each parent to care for each child;

    (x)    Any other factors the court deems necessary and relevant.

Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2021). Mother confines her argument to the first step—the finding of a material change in circumstances. Accordingly, we do not address the best interests factors here.

change in circumstances must affect the welfare of the children." *Ianelli*, ¶ 23, 444 P.3d at 67; *Bishop*, ¶¶ 12–13, 404 P.3d at 1173–74.

> "[W]e have never said the district court must wait until the children exhibit negative consequences before reconsidering custody and/or visitation." *Jacobson*, ¶ 19, 426 P.3d at 821. Rather, the change must hold "some relevance in the child[']s life." *Id.* (quoting *Kappen* [*v. Kappen*, 2015 WY 3], ¶ 15, 341 P.3d [377, 382 (Wyo. 2015)]) (internal quotation marks omitted). We have recognized that "[a] circumstance may have relevance in a child's life before there are outward signs of harm." *Id.* Accordingly, the district court "may take into account the obvious or natural effects of a situation in finding a material change in circumstance." *Id.*

*Ianelli*, ¶ 24, 444 P.3d at 67. "A district court's finding concerning a material change in circumstances is principally a factual determination to which we accord great deference." *Id.* ¶ 23, 444 P.3d at 67 (quoting *Meehan-Greer v. Greer*, 2018 WY 39, ¶ 17, 415 P.3d 274, 279–80 (Wyo. 2018)).

[¶29] The district court concluded that "there has been a material change[] in circumstances sufficient to modify the previous decree's custody and visitation provisions." It identified amplified tensions between the parties caused by JES's brain tumor diagnosis and Mother's exercise of discretionary power in withholding visitation for several months as material changes. The district court found that Mother's decision to deny visitation caused confusion and harmed the children. Despite her allegations that "there has been a substantial and material change in circumstances" warranting modification of custody in her Petition to Modify Custody and Visitation, Mother now argues that the district court's finding of material change in circumstances was erroneous.

[¶30] It is undisputed that since the entry of the original decree, adverse tensions between Mother and Father have intensified. JES was diagnosed with a brain tumor necessitating doctor appointments, hospital visits, ongoing therapies, medication, and changes at school. These events have impacted Mother and Father's relationship and the well-being of the children. The district court's conclusion that there has been a material change in circumstances affecting the children's welfare on this basis is reasonable and is well-supported by the record.

[¶31] The district court also found that Mother's withholding of visitation for a period of several months was a material change in circumstance. "[P]roof of repeated, unreasonable failure by the custodial parent to allow visitation to the other parent in violation of an order may be considered as evidence of a material change of circumstances." *Bishop*, ¶ 14, 404 P.3d at 1174 (quoting Wyo. Stat. Ann. § 20-2-204(c)). Although the decree was ambiguous

as to the bounds of Mother's discretion to limit and reinstate visitation, *see supra* ¶¶ 22–23, she clearly curtailed visitation between Father and the children over a significant time period. This constitutes a material change in circumstances. The district court did not abuse its discretion when it found a material change in circumstances sufficient to modify the decree.

**C.    The district court did not abuse its discretion when it modified the medical decision-making term of the decree.**

[¶32]  The parties' original divorce decree contains no provision regarding medical care exclusively, but provides:

> Major Decisions.  The parties shall discuss major decisions regarding the education, medical and dental care, mental health care, work-related child care, general welfare and other major parental decisions for their child and shall, to the extent possible, make decisions together.  In the event they cannot reach consensus, Mother shall have the final decision-making authority.

[¶33]  The district court modified this provision to provide:

> [P]rior to making a final decision involving whether one of the minor children should undergo a major surgery, if the parties cannot agree, Mother must obtain recommendations from at least three licensed medical professionals knowledgeable about the child's condition.
>
> > a.    Neither party shall interfere with the other parent's ability to communicate with medical professionals involved with the minor children's medical needs.
> >
> > b.    Both parents shall continue to notify the other parent of any medical appointments or information related to the health of the minor children.
> >
> > c.    Father shall not change any access to or otherwise modify the children's health documentation without Mother's specific permission.

> d. Subject to consultation with Father, Mother shall retain the final decision-making authority for the children's healthcare.
>
> e. The parents shall attempt to have joint communications with important medical providers to avoid miscommunications.

[¶34] Mother argues the medical care provision should not have been modified because there was no evidence that the children were harmed by a lack of medical care. As set forth *supra*, our standard of review of a trial court's decision regarding custody, visitation, and relocation orders is one of abuse of discretion. *Johnson*, ¶ 8, 418 P.3d at 822. The record reveals that the parties have frequently had trouble reaching agreements on issues of appropriate medical care for JES. *See supra* ¶¶ 8–9. The district court's modification is intended to assist the parties in communicating about health care choices for the children and to reach common ground in reaching decisions. The modification requires Mother to obtain recommendations from three medical professionals in the event she and Father cannot agree on a major surgery. Otherwise, Mother retains final decision-making authority for the children's healthcare with specific communication and consultation requirements. The modification is a reasonable method of ensuring the parties communicate on healthcare decisions and reach common ground or consensus as to major surgery. We cannot conclude that the court abused its discretion in determining that a clarification was necessary. The district court's modification is reasonable.

**D. The district court did not abuse its discretion when it modified the parenting time and travel terms of the decree.**

[¶35] The parties' original divorce decree addressed custody and visitation, providing:

> B. *Parenting Time.* It is the intention of the parties to provide frequent, liberal, and recurring parenting time to both parents as the children need regular contact with both parents and such parenting time is in their best interest. The parties will not interfere with the other's visitation, and both parents will encourage a quality relationship with both parents.
>
> 9. **Visitation:** Mother and Father agree to a 2-2-3 weekly alternating schedule. Changes to the visitation schedule may be made at Mother's reasonable discretion.

13

The district court modified the visitation terms of the parties' divorce decree as follows:

1. <u>Shared Parenting Time</u>. Each parent['s] parenting time shall be as follows:

    a. School Year Schedule. The parties shall continue with a 2-2-3 weekly alternating schedule.

    b. Summer. The parties shall equally share the summer commencing the first Friday after the release of school and continuing until Friday before school reconvenes by exercising a one week on, one week off schedule with an exchange each and every Friday at 5:00 p.m. Father shall receive the first week of summer visitation in even numbered years and Mother shall receive the first week in odd numbered years. The parties may change this schedule for purposes of family vacation time but shall only do so upon agreement of the parties and with equal time being granted to the other parent.

    c. Holiday Visitation. Holidays shall remain the same as specified in the Decree of Divorce.

.   .   .

3. <u>Discretion Over Father's Parenting Time</u>. Father's parenting time set forth above is contingent on him managing his mental health by following all recommendations of his treatment team (medical providers, counselors, and psychiatrists) and taking his prescribed medication. In the past, Mother has been able to unilaterally restrict Father's time with the children when she has felt he was not healthy to exercise his time with them. This paragraph and below subparagraphs now govern that discretion as follows:

    a. In the event Mother feels Father is not managing his mental health appropriately and is unsafe to exercise his parenting time with the minor children, Mother may withhold the children, but shall notify Father in writing as to why his parenting time is being suspended and what she proposes would remedy the situation. Mother's written basis for suspending Father's

14

parenting time shall be given to Father no later than forty-eight (48) hours after any parenting time is denied under this provision. As soon as the issues stated by Mother can be addressed, and confirmation provided to Mother that Father has taken the appropriate steps to address Mother's stated concerns, Father's regularly scheduled parenting time shall resume.

b. If Father's parenting time is suspended for any period of time, Father may continue to see the minor children in a supervised setting until such time as the situation is resolved. Father shall be solely responsible to arrange for supervised visitation. This supervision may be provided by members of Father's family as long as they are willing to provide 24/7 in-sight supervision.

c. This provision is not in place to give Mother unilateral decision-making power as to when Father can spend time with the children. It continues to be a part of this order only to allow Mother to take action should there be any immediate safety concerns related to the minor children.

Mother argues the district court abused its discretion because this modification was not supported by a corresponding change in circumstances. Mother points out that the district court did not change custody or visitation from the original decree but altered how she could exercise her decision-making authority with respect to visitation/custody.

[¶36] Regarding travel, the original decree provided:

Father shall be permitted to travel with the children domestically and internationally with the children upon agreement of the parties. Travel plans shall be subject to Mother's reasonable discretion. All travel plans must be shared with Mother well in advance of any trip. Agreement will not be unreasonably withheld by Mother. Mother shall also be permitted to travel with the children and will provide notice of travel plans to Father. Both parents will cooperate with one another to exchange all necessary passports and travel documents that belong to the children.

[¶37] The district court modified these terms to require:

> 2.  <u>Travel</u>.  Father shall be permitted to travel with the children domestically so long as he provides at least thirty (30) days written advance notice of the travel to Mother and provides the following: (A) an itinerary of travel dates; (B) destination; (C) places where the children or traveling parent can be reached.  Mother shall also be permitted to travel with the minor children and will provide the same thirty (30) day advanced written notice of an itinerary of travel dates, destination, places where the children or Mother can be reached to Father.  The children shall be permitted to travel internationally with either parent upon agreement of the parties.  All travel plans must be agreed to by both parents in writing at least thirty (30) days in advance.  Agreement shall not unreasonably be withheld by either parent.  It is expected that any travel will be scheduled during the respective parent['s] visitation time unless otherwise agreed upon in writing.  Both parents will cooperate with one another to obtain and exchange all necessary passport and travel documents that may be necessary for travel.  Short weekend or day trips that do not . . . affect either parent['s] respective parenting time shall not require thirty (30) days written notice or agreement.  For example, travel to Colorado.

Mother argues the district court did not find a material change in circumstances related to travel and it abused its discretion in modifying these provisions.

[¶38] "Once the issue of custody or visitation is reopened by a finding of material change in circumstances, the court is required to make an independent determination about what, if any, modification is in the children's best interest." *Booth v. Booth*, 2019 WY 5, ¶ 21, 432 P.3d 902, 909 (Wyo. 2019) (citing *Forbes v. Forbes*, 672 P.2d 428, 429 (Wyo. 1983) ("It is well settled that the district court is not bound to accept a stipulation of the parties and that the court's major consideration in determining custody of minor children is the welfare of those children."); *Mann v. Green*, 2012 WL 2948198, *2 (Del. 2012) ("[T]he judge has broad statutory authority to modify visitation orders in the 'best interests of the child,' even if the parent has not specifically requested that relief in the Petition to Modify Visitation.")).

[¶39] The district court properly considered modification of the decree's provisions governing Mother's discretion over Father's parenting time and travel.  The original decree provided Mother with unfettered discretion to alter Father's visitation and to approve or disapprove Father's travel plans with the children.  She exercised her discretion and limited

16

visitation with no road back to the visitation provided in the decree. Father had only one recourse—to petition the court. As we concluded *supra* ¶ 23, the decree's original language was ambiguous and gave Mother and Father no guidance in terms of Mother's discretion over visitation and travel. The district court did not abuse its discretion in modifying the divorce decree to clarify the travel and visitation provisions.

### III.  Did the district court commit reversible error when it entered findings about the credibility and neutrality of the guardian ad litem?

[¶40]  In its decision letter, after concluding there had been a change in circumstances, the district court evaluated the best interests of the children. In its analysis, the district court commented:

> The Court also considered the investigation and recommendations of the guardian ad litem, who supported the continuation of the parties' previous custody schedule with some modifications to address the circumstances that warranted the foregoing action. **The guardian ad litem, like the counselor, appeared credible and neutral in her investigation and recommendations to the Court.** She clearly did not gain the favor of either party. Her suggestions were relevant to promote a continued co-parenting relationship that would be in the best interests of the children.

(Emphasis added.) Mother contends that the district court committed reversible error in making a finding addressing the credibility and neutrality of the GAL. Mother also argues the GAL improperly elicited testimony when examining witnesses vouching for the GAL's credibility and bolstering the GAL's recommendation. She argues that those questions placed the GAL's credibility at issue and should not have been allowed. Mother also asserts that this Court should provide guidance for guardians ad litem in cases such as this one.

[¶41]  Father counters that it was Mother who put the GAL's investigation and neutrality at issue, and, in any event, the Court should not consider Mother's argument because she did not object to the GAL's questioning at trial and any objections were waived.[5]

[¶42]  "Normally, we will not consider an issue raised for the first time on appeal, but we have recognized 'two exceptions to this rule: when the issue raises jurisdictional questions or when the issue is of such a fundamental nature that it must be considered.'" *Int. of VS*,

---

[5] Mother's attorney objected to one question the GAL asked of the paternal grandfather on the grounds that he was not designated as an expert witness. That objection was overruled. Mother's arguments here do not concern that objection or the district court's ruling on it.

17

2018 WY 119, ¶ 25, 429 P.3d 14, 21–22 (Wyo. 2018) (internal citation omitted) (quoting *In Int. of ECH*, 2018 WY 83, ¶ 21, 423 P.3d 295, 302 (Wyo. 2018)). This issue implicates neither of these exceptions. The Wyoming Rules of Appellate Procedure provide, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." W.R.A.P. 9.05; *see also Guy-Thomas v. Thomas*, 2015 WY 35, ¶¶ 9–10, 344 P.3d 782, 785–86 (Wyo. 2015) ("[f]ailure to object constitutes waiver of whatever alleged error occurred, unless the error rises to the level of plain error"); *Case v. Outback Pipe Haulers*, 2007 WY 181, ¶ 14, 171 P.3d 514, 517 (Wyo. 2007); *but see Weber v. Johnston Fuel Liners, Inc.*, 519 P.2d 972, 976 (Wyo. 1974) (any objection appellant had to evidence was waived by the failure to assert an objection at that time).

[¶43]  Mother does not argue that this error affected a substantial right. She cites only one case in her argument regarding the GAL: *Pace v. Pace*, 2001 WY 43, 22 P.3d 861 (Wyo. 2001), *overruled on other grounds by Bruegman v. Bruegman*, 2018 WY 49, 417 P.3d 157 (Wyo. 2018). In *Pace*, the district court invited the GAL to testify regarding the results of her investigation and her recommendation. *Pace*, ¶ 5, 22 P.3d at 864. We reversed, holding that the GAL "impermissibly acted as both trial counsel and a witness." *Id.* ¶ 24, 22 P.3d at 869. The present case is distinguishable. Here, the GAL did not testify, but cross-examined Mother about her concerns with the GAL's investigation. Mother has not established that the district court plainly erred by allowing that testimony; nor has she established that it abused its discretion when it commented on the GAL's neutrality and credibility when it considered the children's best interests. The district court's analysis of best interests, encompassing over three pages in its the decision letter, went far beyond its consideration of the GAL's recommendation.

[¶44]  Mother also invites the Court to provide guidance to guardians ad litem, yet she offers no cogent argument and cites to no authority that would assist the Court in this undertaking. We decline her invitation to expand our guidance to GALs. *See Matter of TJH*, 2021 WY 56, ¶ 13, 485 P.3d 408, 413 (Wyo. 2021) (where mother presented "no cogent argument or citation to pertinent legal authority" we could decline to consider the matter); *Willey v. Willey*, 2016 WY 116, ¶ 30, 385 P.3d 290, 299–300 (Wyo. 2016) ("We need not consider issues which are not supported by proper citation of authority and cogent argument or which are not clearly defined." (quoting *Hamburg v. Heilbrun*, 889 P.2d 967, 968 (Wyo. 1995))).

## IV.  *Did the district court abuse its discretion when it did not order a change in child support?*

[¶45]  Mother argues that the district court failed to address her request for child support modification. Father did not respond to this argument.

[¶46]  The district court's decision letter provides, "All other provisions within the Stipulated Judgment and Decree of Divorce Nunc Pro Tunc entered on October 1, 2018

18

not modified herein, shall remain in full force and effect." The district court's order modifying custody and visitation provided "[a]ll other provisions of the Decree not otherwise modified or addressed herein shall remain in full force and effect."

[¶47] District courts have broad discretion in determining child support and will not abuse their discretion unless acting "in a manner which exceeds the bounds of reason under the circumstances." *Marquis v. Marquis*, 2020 WY 141, ¶ 20, 476 P.3d 212, 218 (Wyo. 2020) (citations omitted) (Failure to hold evidentiary hearing regarding income was not an abuse of discretion.). Child support in the original divorce decree was stipulated to by Mother and Father. Neither custody nor visitation was changed after a trial on the parties' separate petitions to modify. The district court addressed the request to modify child support by finding that "other provisions [of the divorce decree] not modified herein, shall remain in full force and effect." Unsurprisingly, the district court left child support unchanged when it did not modify custody. The district court did not abuse its discretion when it did not separately address change in support in its decision letter and order.

## CONCLUSION

[¶48] Because the divorce decree was ambiguous, Mother could not readily know the duties imposed on her in exercising her discretion to limit visitation. The district court's finding of contempt is reversed. The district court did not abuse its discretion when it modified the terms of the divorce decree, and it did not commit reversible error when it entered findings about the credibility and neutrality of the guardian ad litem. Finally, the district court did not abuse its discretion when it did not modify child support. We affirm in part and reverse in part.