# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 98

OCTOBER TERM, A.D. 2023

October 10, 2023

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING STATE
BAR,
Petitioner,

V.

ATTORNEY DOE,

Respondent.

**Original Proceeding for Attorney Reinstatement Following Transfer to Disability Inactive Status**

*Representing Petitioner:*
    Mark W. Gifford, Bar Counsel, Wyoming State Bar.

*Representing Respondent:*
    Attorney Doe, pro se.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Attorney Doe seeks to reinstate his license to practice law after a period of disability inactive status.[1]  The Board of Professional Responsibility (BPR) recommends we deny Doe's request for reinstatement.  Doe objects to that recommendation.  After reviewing the record, including the exhibits and hearing transcript, and after considering the briefing by Doe and Bar Counsel, we deny Doe's petition for reinstatement.

[¶2]    The primary issue presented is whether Doe met his evidentiary burden to show, by clear and convincing evidence, that he recovered from the infirmity that led to his transfer to disability inactive status.  Case law and commentary from other states illustrate the scope of evidence courts typically evaluate in disability reinstatement decisions.  The testimony and documentary evidence presented in this case was limited, and the standard of proof was not met.  We have no reason to doubt Doe's veracity or his accomplishments outside the practice of law during his period of inactive status, but we are not able to reinstate him on the limited evidence presented.  The rules allow him to reapply for reinstatement and this order offers some guidance for future proceedings.

### *JURISDICTION*

[¶3]    All attorneys practicing in Wyoming are subject to the disciplinary and disability jurisdiction of this Court.  W.R.D.P. 1(b).  Proceedings under the disciplinary rules, inclusive of disability proceedings, are "incident to the inherent power of courts to control properly their own affairs."  *Bd. of Prof'l Resp. v. Hinckley*, 2022 WY 18, ¶ 2, 503 P.3d 584, 592–93 (Wyo. 2022) (citations omitted).  We have "the power, the duty, and the corresponding jurisdiction to supervise the conduct of all Wyoming attorneys, each of whom is an officer of the court."  *Id.*  The disciplinary and disability procedures are used to maintain the highest standards of professional conduct, to maintain the integrity of the

---

[1] W.R.D.P. 3(c) makes public any orders transferring an attorney to or from disability inactive status.  That notice requirement is an effort to avoid misleading the public about an attorney's license to practice law. ABA, Model Rules for Lawyer Disciplinary Enforcement R. 23(d), cmt.  A decision denying reinstatement from disability inactive status does not raise the same concern.  While W.R.D.P. 9(b) requires us to publish decisions related to petitions for reinstatement in the Pacific Reporter, this is not an order transferring an attorney to or from disability inactive status. As such, we are not obligated to entirely remove this matter from its confidential status. Disability proceedings are otherwise confidential and present sensitive and personal mental health and medical information.  In order to provide guidance to the practicing bar about reinstatement proceedings and comply with W.R.C.P.9(b), we find it appropriate to issue a substantive order.  However, to avoid deterring attorneys from using the valuable tool of disability inactive status, we find it appropriate to limit the information presented.  We therefore adopt the procedure used in at least one other jurisdiction to omit the attorney's name and remove personally identifying mental health information.  *See In re Reinstatement of Doe*, 349 So.3d 159, n. 1 (Miss. 2021); *In re Reinstatement of Doe*, 22 So.3d 262, n.1, 3 (Miss. 2009). A confidential order inclusive of identifying information is concurrently issued and available to the parties in this case.

bar, to protect the public, and to protect the administration of justice. W.R.D.P. 1(a); *Hinckley*, 2022 WY 18, ¶ 3, 503 P.3d at 593 (quoting *Bd. of Prof'l Resp. v. Richard*, 2014 WY 98, ¶ 51, 335 P.3d 1036, 1051 (Wyo. 2014)).

[¶4]    Accordingly, this Court enacted the rules for disciplining, suspending, and disbarring Wyoming attorneys. *See* Wyo. Stat. Ann. § 5-2-118(a)(iii) (LexisNexis 2023). One of those rules, Rule 20(a), permits the transfer of a licensed attorney to disability inactive status when "it is shown that an attorney is unable to fulfill professional responsibilities competently because of physical, mental or emotional infirmity or illness[.]" W.R.D.P. 20(a).  A transfer to disability inactive status is not a form of discipline. *Id.*  It is a mechanism to protect the public, and to protect lawyers from committing disciplinary violations if allowed to continue in practice; but disability proceedings are not discipline for wrongdoing. A. Greenbaum, *Lawyer Transfers to Disability Inactive Status—A Comprehensive Guide*, 2017 J. of Prof. Lawyer 1, 7–8 (2017). Disability decisions are, however, governed by many of the same procedures used in disciplinary proceedings. *See In re Dwyer-Jones*, 24 NE.3d 566, 569 (Mass. 2015) ("Although 'disability proceedings are not disciplinary proceedings,' we recognize that they have procedural similarities." (citations omitted)); *In re Diamondstone*, 105 P.3d 1, 4 (Wash. 2005) ("Disability proceedings are not disciplinary proceedings, but they are conducted under the same procedural rules unless otherwise noted . . . .").

[¶5]    After an attorney is transferred to disability inactive status, an attorney may request reinstatement by filing a verified petition for reinstatement.  W.R.D.P. 23(b)–(d). If the attorney and Bar Counsel do not reach a stipulation for a return to active status, then the matter proceeds to a hearing before the BPR as it would for disciplinary proceedings. W.R.D.P. 23(h)(3) (referencing W.R.D.P. 15).  If the BPR does not recommend reinstatement, the attorney may object and proceed to this Court. W.R.D.P. 16, 23(h)(5). The BPR recommends against the reinstatement of Doe.  He timely objected, placing the matter before this Court.

### STANDARD OF REVIEW

[¶6]    Our authority in disciplinary and disability proceedings is plenary. *See* W.R.D.P. 1(d).  The ultimate judgment in disciplinary and disability proceedings is ours. Accordingly, we are not required to adopt the BPR's report and recommendation, nor are we bound by the BPR's findings of fact, view of the evidence, or credibility determinations, although we give due consideration to those findings and determinations. *Bd. of Prof'l Resp. v. Manlove*, 2023 WY 27, ¶¶ 2–7, 527 P.3d 186, 194–96 (Wyo. 2023) (quoting *Hinckley*, 2022 WY 18, ¶ 3, 503 P.3d at 593).  We conduct a de novo review and may make our own findings based on the record before us.  *Id.*; *Hinckley*, 2022 WY 18,

¶ 4, 503 P.3d at 593 (quoting *Bd. of Prof'l Resp. v. Custis*, 2015 WY 59, ¶ 36, 348 P.3d 823, 832 (Wyo. 2015)).

[¶7]    The burden of proof in a reinstatement proceeding is on the attorney to show by clear and convincing evidence:

> that the attorney [1] has sufficient recovery from the physical, mental or emotional infirmity or illness giving rise to the transfer to disability inactive status, [2] has complied with all applicable orders and with all provisions of these rules, [3] has not engaged in the unauthorized practice of law, and [4] is fit to practice law.

W.R.D.P. 23(g).  Our review is therefore to determine whether Doe met that burden and standard of proof.  Clear and convincing evidence is "that kind of proof that would persuade a trier of fact that the truth of the contention is highly probable." *Manlove*, 2023 WY 27, ¶ 6, 527 P.3d at 195 (citing *Bd. of Prof'l Resp. v. Stinson*, 2014 WY 134, ¶ 29, 337 P.3d 401, 409 (Wyo. 2014)); *see also, e.g.*, *Evans v. Sharpe*, 2023 WY 55, ¶ 16, 530 P.3d 298, 302 (Wyo. 2023).

## STATEMENT OF THE CASE

### Prior Disciplinary Proceedings and Transfer to Disability Inactive Status

[¶8]    In 2017, three disciplinary grievances were filed against Doe.  Special Bar Counsel was appointed to investigate the grievances, and the three cases were ultimately consolidated into one disciplinary matter.  The grievances alleged, in short, a lack of competence and diligence, conflict of interest issues, inadequate supervision of staff, failure to respond to or cooperate with Bar Counsel during the disciplinary investigation, making arguments without a basis in law, and other issues.  With the assistance and advice of counsel, Doe agreed to the alleged violations, conditioned on the approval by the BPR of a stipulated motion to transfer him to disability inactive status and for a concurrent thirty-month suspension as a disciplinary action.

[¶9]    Initially, the BPR rejected the stipulated agreement.  However, after further deliberation and a hearing at which Doe struggled to testify, the BPR agreed to reconsider the stipulation if Doe agreed to "obtain a qualified evaluation of his mental and emotional health" and "to follow up on any treatment recommendation before seeking reinstatement."  Doe agreed to obtain an evaluation but had concerns about the cost.  The bar agreed to pay for the evaluation, and the BPR promptly ordered it.  A qualified

3

psychologist conducted the evaluation and provided her report to the parties and the BPR in September 2018.[2]

[¶10]   The psychologist's report acknowledged Doe's intelligence and aptitude but also identified a distinct emotional trigger, with corresponding emotional and mental behaviors, when asked to discuss the practice of law and the disciplinary proceedings. The psychologist included three express diagnoses in her report and included some treatment recommendations.  She concluded Doe's emotional infirmity was preventing him from functioning well enough to fulfill his professional responsibilities but that "[i]f he can reduce his level of depression and anxiety related to practicing law, he may be reevaluated to see whether he can return to active status."

[¶11]   After receiving the evaluation, Special Bar Counsel and Doe reached a stipulation. It was signed by Doe on November 18, 2018, but fully executed and filed on November 29, 2018.  They jointly moved the BPR to accept that stipulation to resolve the several grievances.  The stipulation had the effect of bifurcating the proceedings into a disability proceeding with a related disciplinary proceeding.  The stipulation included an agreement to transfer Doe to disability inactive status.  Doe also signed a disability affidavit affirming that he was "unable to fulfill professional responsibilities competently because of mental or emotional infirmity."  The stipulation included an affirmation of the requirements for reinstatement after the transfer to disability inactive status, including his burden to prove recovery from the infirmity and that Bar Counsel be able to conduct an investigation.  For the disciplinary matter, the parties also stipulated to a 30-month suspension as a disciplinary sanction.  Despite expressing that neither party wanted to defer that disciplinary action or public censure, they also stipulated that the suspension and censure would be entered at a later date, retroactively, upon reinstatement or disbarment if reinstatement was not sought.

[¶12]   The BPR heard the motion to adopt the stipulation on December 11, 2018.  It adopted the parties' new stipulation and found a variety of facts to support its recommendation that Doe be transferred to disability inactive status.  It noted Doe's statements explaining that he "had been overwhelmed in private practice, had not been coping well, and believed that he must, at a minimum, take a prolonged break from practice."  The BPR concluded that, pursuant to the psychologist's evaluation, Doe "is unable to fulfill professional responsibilities competently because of mental or emotional infirmity, and therefore, he should be transferred to disability inactive status[.]"

_____

[2] Doe raised concerns during his disciplinary proceeding about the privacy associated with mental health evaluations or treatment as a condition of a published, public disciplinary order.  Accordingly, the psychologist's report was submitted to the BPR and this Court under seal.  The BPR likewise attempted to keep mental health information private by submitting its 2018 two-part report and recommendation to us in separate parts, to withhold mental health information and treatment from any published disciplinary decision.  Our efforts to remove personally identifying information from this published order continue the efforts previously made in this matter.

4

[¶13] On January 18, 2019, the BPR presented us with a two-part recommendation. One recommendation was to transfer Doe to disability inactive status and that to be reinstated, Doe must comply with W.R.D.P. 23, pass the Multistate Professional Responsibility Exam (MPRE), and complete an accredited writing class. The recommendation did not include a provision that Doe comply with the phycologist's recommendations. The second recommendation was for a 30-month suspension accompanied by a public censure, to begin the date of the transfer to disability inactive status but to be issued retroactively once reinstatement occurred or when disbarment occurred if reinstatement was not sought.

[¶14] We adopted the BPR's report and its first recommendation to transfer Doe to disability inactive status. We also ordered that to be reinstated Doe would (1) need to comply with the requirements of the applicable rule for reinstatement, (2) retake and pass the MPRE, and (3) complete an accredited college or law school writing class for at least one semester. We did not address the accompanying disciplinary matter addressed in the BPR's second recommendation.

### *Reinstatement Proceedings*

[¶15] In 2022, Doe petitioned to reactivate his license. He attached to his petition documentation showing his CLE, annual fee, and registration compliance; his MPRE score from the exam administered in March 2021; and his satisfactory completion of a one-semester writing course at a Wyoming community college. He also attached a letter from his counselor discharging him from counseling in November 2018—a date more than two months prior to his disability inactive transfer. Bar Counsel asked for additional information.

[¶16] Bar Counsel's request went largely unanswered. In October 2022, Doe signed a release to allow Bar Counsel to access his counselor's records and a general medical waiver and release form. Bar Counsel requested that information be provided directly, through Doe's counsel, but the record does not detail other investigation efforts. Bar Counsel answered Doe's petition, expressing opposition to his reinstatement. Pursuant to W.R.D.P. 23, the BPR set the matter for a hearing.

[¶17] At the hearing, Doe presented his own testimony and no other witnesses. He also presented certificates and evaluations related to his military service; his recent Masters in Law (LLM) in international mediation transcript; and a press release about a mediation competition that he won. The BPR determined that Doe did not meet his burden of proof and recommended the petition for reinstatement be denied. It noted the limited evidence presented about Doe's recovery fell short of clear and convincing evidence:

> 12. At the hearing, Respondent testified on his own behalf regarding his activities since being placed on disability inactive status. Respondent has been engaged in full-time

5

military service while on disability inactive status. Respondent provided evidence of his unblemished military service as well as completion of a college writing class and obtaining an LLM in alternative dispute resolution . . . .

13. Although Respondent testified that he has had periodic communications with his counselor, [] as well as a military counselor and his [military] chaplain, he was unable to provide specific dates of such communications nor any documents relating to such communications.

14. Respondent called no other witnesses and Bar Counsel called none.

15. Although Respondent deserves considerable credit for the progress he has made during his disability inactive status the evidence of Respondent's recovery from the mental health issues giving rise to Respondent's transfer to disability inactive status falls short of "clear and convincing evidence that he has sufficient recovery" from such issues.

16. The Panel notes that twelve days before the November 30, 2018, discharge summary from [his counselor] which Respondent alleges indicates Respondent's readiness to reenter the active practice of law (Respondent's Exhibit A), on November 18, 2018, Respondent signed an affidavit supporting his transfer to disability inactive status in which he agreed that he should be transferred to disability inactive status based upon [the psychologist's] report. *See* Exhibit BC-6. The Panel finds the evidence insufficient to prove that Respondent made sufficient progress in his treatment between November 18, 2018, the date of his affidavit, and November 30, 2018, the date of his discharge by [his counselor], to render him fully fit to engage in the active practice of law.

17. In addition, the Panel notes that though the BPR recommended that Respondent comply with [the psychologist's] treatment recommendations, *see* Exhibit BC-7 page 2; Exhibit BC-8, Respondent did not present evidence of having complied with [the psychologist's] recommendations.

18. Respondent has not met his burden of proving by clear and convincing evidence that he has sufficient recovery from the physical, mental or emotional infirmity or illness giving rise to the transfer to disability inactive status.

BPR Recommendation at ¶¶ 12–18.

[¶18]   The BPR expressly noted in its decision that, notwithstanding its recommendation, Doe could reapply for reinstatement pursuant to W.R.D.P. 23(b) which permits petitions to be filed once every twelve months.  The BPR also agreed with Doe that formal treatment may not be required for reinstatement or to prove his recovery.  The BPR suggested that if he reapplied for reinstatement, an updated psychological evaluation, as occurred in the 2018 proceedings, may be helpful in order to meet his burden of proof.  We are not aware of a new petition for reinstatement being filed.  Doe's objection timely followed the BPR's recommendation.

## DISCUSSION

### Procedures for Reinstatement

[¶19]   We have no published precedent when reinstatement after a transfer to disability inactive status is contested.  The general procedures for reinstatement are set by rule.  An attorney transferred to disability inactive status may seek to return to active status by filing a verified petition for reinstatement with the BPR and serving a copy on Bar Counsel.  W.R.D.P. 23(b).  That petition must include: "facts showing that the attorney has demonstrated sufficient recovery from the physical, mental or emotional infirmity or illness giving rise to the transfer to disability inactive status and the attorney possesses all of the qualifications required of applicants for admission to the Wyoming State Bar." W.R.D.P. 23(c).  The petition must also include certification that the petitioner: (1) is current on all license fees; (2) complied with all continuing legal education requirements and paid all necessary fees during the period of disability inactive status; and (3) complied with all requirements of the Court's order that transferred the attorney to disability inactive status.  *Id.*  Doe's petition included this additional required information; he attached proof of license fees, a certification of his CLE compliance, and proof that he passed the college writing class and the MPRE we ordered he complete.  He also included the counseling discharge report he relied on as proof of recovery.  Whether that discharge report is sufficient to prove his recovery is central to this dispute.

[¶20]   Once Attorney Doe filed his petition for reinstatement, the rules contemplate that certain disclosures and an investigation will follow.  Bar Counsel "shall conduct any investigation Bar Counsel deems necessary," and the attorney seeking reinstatement "shall cooperate in any such investigation." W.R.D.P. 23(h)(i); *see Sims v. Day*, 2004 WY 124, ¶ 10, 99 P.3d 964, (Wyo. 2004) ("[T]he use of the term 'shall' in a procedural rule is

7

generally mandatory." (citations omitted)). The attorney is required to disclose the name and address of every mental health or medical provider during the period of incapacity, and the filing of the petition also acts as a waiver of any privilege with respect to any health care treatment during that period of incapacity. W.R.D.P. 23(e). Bar Counsel can also request an independent evaluation of the attorney's disability. *Id.*

[¶21] Doe disclosed the name and address of one counselor but did not disclose the names of any other providers he saw or spoke with following his transfer to disability inactive status. Bar Counsel noted this during the BPR hearing when Doe testified to working with other providers (a chaplain and a military psychologist) after his transfer. Doe had executed a waiver to allow Bar Counsel access to records from all types of providers but had not disclosed the identity of any other providers from whom Bar Counsel might obtain records. Doe denied knowing that Bar Counsel asked for additional information. Bar Counsel did not request or offer to pay for an independent evaluation. Accordingly, this matter proceeded to an evidentiary hearing absent fulsome disclosure or investigation.

### *Parameters to Prove Recovery*

[¶22] Of the four elements Doe had to prove by clear and convincing evidence—recovery from the prior infirmity; compliance with all applicable orders and rules; no intervening practice of law; and fitness to practice—two were before the BPR for consideration: recovery and fitness.[3] *See* W.R.D.P. 23(g). We have not evaluated the parameters of how to prove recovery in disability cases through published opinions or otherwise.[4] However, other states have, and we found some applicable legal commentary and secondary authority, which illustrate the factors courts consider to prove recovery and the type of evidence an attorney might present to support their petition.

[¶23] In Colorado, for example, the supreme court applies an eight-part factor test when asked to evaluate an attorney's recovery in a disability reinstatement proceeding. *People v. Klein*, 756 P.2d 1013, 1015–16 (Colo. 1988). We note that Colorado applies the same factor test in disciplinary reinstatement proceedings. This is consistent with the principle that while disability and disciplinary proceedings are different in kind, they are governed by the same or similar rules and procedures. *In re Dwyer-Jones*, 24 NE.3d at 569; *In re*

---

[3] The BPR did not include express findings on the elements of compliance with prior orders or whether any intervening practice of law occurred. However, Bar Counsel did not contest these two criteria in its Answer opposing reinstatement.

[4] Our rule for reinstatement requires proof of "recovery." W.R.D.P. 23(g). Some other courts and the American Bar Association use the word "rehabilitation" or "removal" of the infirmity. Commentators sometimes use the word "ameliorated." Greenbaum, *Lawyer Transfers to Disability Inactive Status—A Comprehensive Guide*, 2017 J. of Prof. Lawyer at 1. For purposes of our discussion here, we decipher no substantive difference when these various terms are used.

*Diamondstone*, 105 P.3d at 4.[5]  The factors evaluated in Colorado are (1) character; (2) conduct since the imposition of the original discipline; (3) professional competence; (4) candor and sincerity; (5) recommendations of other witnesses; (6) present business pursuits; (7) personal aspects and community service; and (8) recognition of the seriousness of the previous misconduct.[6]  *Klein*, 756 P.2d at 1015–16.

[¶24]  In 2016, the Colorado Supreme Court applied the factor test when it evaluated whether to reinstate an attorney previously transferred to disability inactive status due to alcohol dependency.  *Kline v. People*, 367 P.3d 116, 123–25 (Colo. 2016).  The written opinion detailed the evidence presented to support the attorney's theory of the case.  After his suspension from practice, the attorney did not go to inpatient treatment for recovery and thus professional treatment records were not provided as proof of recovery.  Instead, the attorney used randomized alcohol testing, the services of *Lawyers Helping Lawyers*, and some other self-guided help.  *Id.* at 120–21.  During his disability inactive status, he spent a few years doing different types of work: working for a period as a landman, then volunteering with an animal shelter, and helping a friend redesign a website (LegalDocs) designed for self-represented litigants.  *Id.*  When the attorney petitioned for reinstatement several years later, he proved his recovery by presenting a variety of witnesses and

---

[5] Other states also apply a factor test in disciplinary reinstatement proceedings.  Whether the factor test will be universally applied in disability reinstatement cases is not yet reflected in case law or legal commentary.  The common factors are:

> (1) the petitioner's present moral fitness; (2) the petitioner's acceptance of wrongdoing with sincerity and honesty; (3) the extent of the petitioner's rehabilitation; (4) the nature and seriousness of the original misconduct; (5) the petitioner's conduct following the discipline; (6) the time elapsed since the original discipline; (7) the petitioner's character, maturity, and experience at the time of discipline and at present; (8) the petitioner's current competency and qualifications to practice law; (9) restitution; and (10) the proof that the petitioner's return to the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive of the public interest.

*In re Reinstatement of Wiederholt*, 24 P.3d 1219, 1224–25 (Alaska 2001).  *See also In re Pier*, 561 N.W.2d 297, 300–01, n.3 (S.D. 1997) (canvassing the factor tests used around the country); ABA, Model Rules for Lawyer Disciplinary Enforcement R. 25 (July 16, 2020).

[6] According to a more recent decision by the Colorado Supreme Court, these eight factors were adopted from an earlier version of the ABA's *Lawyers' Manual on Professional Misconduct*.  *Kline v. People*, 367 P.3d 116, 123, 124 n. 11 (Colo. 2016).  The *Kline* decision continued to apply the established eight-factor test but noted that a more recent version of the ABA's manual recommends a somewhat different set of factors to consider: (1) the seriousness of the original offense, (2) conduct since being disbarred or suspended, (3) acceptance of responsibility and remorse, (4) how much time has elapsed, (5) restitution for any financial injury, (6) maintenance of requisite legal abilities, and (7) the circumstances of the original misconduct, including the same mitigating factors that were considered in the earlier proceedings. *Id.*; ABA/Bloomberg, *Lawyers' Manual on Professional Misconduct* at 101:3013 (2012 update).

information to corroborate his own testimony. *Id.* at 121, 122, 123–25. After considering the evidence in relation to the eight factors, the court granted the petition for reinstatement.

[¶25] In a Mississippi decision, *In re Reinstatement of Roe*, 349 So.3d 159 (Miss. 2021), a lawyer was suspended for disability related to mental health, namely depression. The court looked at the two professional reports attached to the petition, as well as (1) letters of recommendation from attorneys the attorney had known for many years; (2) a letter from her current employer of several years; and (3) a deposition by bar counsel in which the attorney detailed her mental health history, treatment, and employment history that slowly returned her towards the practice of law. *Id.* at 160–61, 162. She started working part-time work in a non-legal field; shifted to full-time work; then worked as an office manager; next as a paralegal and legal assistant; and then began working as a law clerk in the judicial branch. *Id.* at 162. The court also looked at her history of community service during her inactive period. It adopted the bar's recommendation for reinstatement and stated:

> Roe has shown great dedication to bettering and maintaining her mental health condition, great dedication to the legal field, and thoughtful and deliberate consideration of how to merge those two areas without either area suffering negative consequences. It indicates that her disability has been removed as her depression is in remission and that she has become highly aware of her mental health and can more easily recognize when to seek help before her mental health condition deteriorates. Roe has also kept abreast of the law, using it for her employment as a law clerk, and she also testified that she reads the Mississippi Supreme Court and Court of Appeals cases.

*Id.*

[¶26] In Wisconsin, an attorney was suspended for disability related to alcohol dependency. *In re Schlieve*, 867 N.W.2d 767 (Wisc. 2015). Similar to Wyoming's W.R.D.P. 23(g), the rule in Wisconsin requires the attorney to show "by clear, satisfactory, and convincing evidence" that (1) the incapacity has been removed and (2) the petitioner is fit to resume the practice of law, with or without conditions. *Schlieve*, 867 N.W.2d at 771 (discussing Wisc. Sup. Ct. R. 22.36(6)). The *Schlieve* court looked at the attorney's work history during her inactive status: she did not work outside the home and was a stay-at-home caregiver; she volunteered at church and a dog rescue; and she helped a friend with two start-up businesses unrelated to the practice of law. *Id.* at 770. She presented evidence beyond her own testimony, including the Lawyer's Assistance Program director who testified about difficulties in the attorney's compliance with the substance abuse monitoring program. *Id.* The court also considered her CLE courses during her

suspension; all occurred online, and they were in topic areas like tax and securities enforcement, the Sarbanes-Oxley Act, and mining law, none of which were in the attorney's desired areas of practice. *Id.* at 770–71. The court also noted the attorney's lack of cooperation with the bar counsel's investigation after she filed her petition for reinstatement. *Id.* at 770. Her petition for reinstatement was denied.

[¶27] As the circumstances of each disability proceeding are unique and highly personal, we choose not to adopt a specific factor test to use in disability proceedings. Nevertheless, we are guided by these other courts' analyses. We note from this body of law that the attorney's testimony alone is rarely deemed clear and convincing evidence of recovery. Courts require more, but they do not require proof of formal treatment as Bar Counsel suggests is necessary in this case. In the absence of formal treatment reports, corroborating evidence or other recommendations from legal or mental health professionals understandably can weigh heavily when evaluating recovery.

### Doe's Evidence

[¶28] Only Doe testified at the BPR hearing, and his documentary evidence was limited in scope. He presented no professional reports or recommendations from colleagues in the legal or other professions. Doe asserts the "proof is in the pudding" and his recovery is shown "through example." In sum, he asks us to infer that his work in the military, completion of various military trainings, and completion of an LLM proves he has recovered from the mental and emotional infirmity that earlier compromised his ability to practice law. We examine Doe's evidence in detail to determine whether it amounts to clear and convincing evidence he has recovered such that he can re-enter the practice of law and competently fulfill all of his professional responsibilities as an active member of the Wyoming State Bar.

### A. Military Service

[¶29] Doe enlisted in a branch of the National Guard after high school. By the time of his transfer to disability inactive status, he had served in the military for more than twenty years. The transfer to disability inactive status had no apparent impact on his military career. After the transfer, Doe continued his military service and was deployed to serve outside the United States. After returning from deployment, he was promoted, then released from the National Guard, and now serves in the same military branch's Reserves as an instructor.

[¶30] Doe presented a variety of military service records and certificates from training courses for the BPR and us to consider as evidence of his recovery. One of the military training courses occurred prior to his transfer to disability inactive status. This course was to teach military instructors how to use an adult learning model. It ended in January 2019, two weeks before we transferred Doe to disability inactive status. We decline to consider

a course that occurred prior to his disability inactive status as evidence of his recovery from that disability.

[¶31] In the months before and after his disability inactive status, he completed a 54-week course in the Command and General Staff College. The course began in September 2018, several months before the disability inactive transfer, and ended in September 2019. Doe's testimony about this course did not describe its content or topic areas in particular detail. His evaluation from that course indicated his "tactical experience, grasp of doctrine, and analysis of complex problems" were an asset for the training group. It also commended him for being an "excellent writer." Of the four ranks of academic achievement: Non-Graduate, Graduate, Superior Graduate (for those in the top 30 to 11 percent), and Distinguished Graduate (for those in the top ten percent), Doe scored at the base passing score of "Graduate." The report and his testimony do not illustrate how completion of this course is evidence of recovery from a prior mental or emotional health infirmity or how it supports his fitness to practice law.

[¶32] Doe also attended a three-week course in Security Cooperation Management. Doe testified that this course is to teach participants how to work with other countries, focusing on foreign military sales such as selling jets and artillery to other countries in a cooperative manner. Again, the certificate and the limited testimony do not illustrate how completion of this course is evidence of recovery from a prior infirmity or supports his fitness to practice law.

[¶33] Doe completed a 60-hour "Equal Opportunity Leaders Course" from March 18 to 27, 2019. Doe testified this course was to learn about diversity, equity, and inclusion principles. He attended a "Leaders Regional Advise and Assist Course," completed on August 10, 2019. Again, the certificate and testimony do not illustrate how completion of these courses evidences recovery from a prior infirmity or supports his fitness to practice law, aside from its general relevance that attorneys should be aware of the role diversity, equity, and inclusion play in the legal profession and the justice system. *See generally* ABA, Member Diversity, Equity, and Inclusion Plan, *available at* https://www.americanbar.org/content/dam/aba/administrative/diversity-inclusion-center/ new-bog-approved-member-dei-plan.pdf (last visited Sept. 21, 2023); ABA, *Diversity & Inclusion 360 Commission Executive Summary* (Aug. 2016), *available at* https://www.americanbar.org/content/dam/aba/administrative/diversity-inclusion-center/ di-360-commission-executive-summary.pdf.

[¶34] Doe's annual evaluation as a service member for the period the year after his transfer to inactive disability status explained that he was "competent and ranks in the middle third of the officers" the evaluator rates. The evaluation identifies Doe's service as a Theater Security Cooperation Lead for a National Guard Field Artillery unit and that he had a liaison role communicating up and down a chain of command in various venues abroad. Doe testified that this work was related to artillery and "mission fires" in various

venues. Of the evaluation's four rankings—Unsatisfactory, Capable, Proficient, and Excels (for the top 49%)—Doe was ranked as Proficient. While we have no cause to doubt the veracity of this evaluation and the value of Doe's service, again the testimony was sparse and did not illustrate how his work with the field artillery unit and its tactical missions reflect his recovery from the mental and emotional infirmity he experienced while practicing law or his present fitness to practice law.

[¶35] Doe did testify about the stress of deployment and working in other countries in support of his theory that the "proof is in the pudding." For mental health support during deployment, he accessed a military chaplain and military psychologist. He candidly admitted that he rarely used those resources. "[I]f I was to say that I relied heavily on [the military psychologist], that would be a lie. I talked to him a couple of times. Really, it was my faith during the military." He testified that he relied on his chaplain "quite a bit," including confession which he continues to do. He also testified about the readily-available resiliency trainings during deployment, that he did "a couple of them," and found them helpful. However, the nature of those trainings and how they might apply to the practice of law or in the face of stress outside the military was not developed in his testimony or otherwise. We nevertheless recognize the value of resiliency training by noting the body of professional literature analyzing the benefits of such trainings to the legal profession. *E.g.*, Paula M. Davis-Laack*, Army Lessons: Creating a Culture of Resilience*, Wisc. Lawyer (Jan. 2019); Debra C. Weiss, ABA Journal Blog, *Law Firms Should Follow Army's Lead, Try Resilience Training, Psych Expert Says* (April 20, 2011, 10:30 AM CDT), https://www.abajournal.com/news/article/law_firms_should_follow_armys_lead_try_resilience_training_psych_expert_say.

[¶36] After his return from deployment during his disability inactive status, Doe was promoted one rank. A personnel review in 2022 described Doe's leadership during the COVID-19 pandemic, his contributions to mission readiness, and his support for internal audits and other programs to ensure a positive environment for his organization. He was again ranked as Proficient. We recognize the achievement and the leadership role associated with the increased rank. However, the testimony did not link the service or the skills reflected in this evaluation and promotion with recovery from the prior infirmity that was uniquely related to Doe's experience in a different field—the practice of law.

[¶37] Doe provided testimony about various medals he received during his military service. Neither his testimony about these medals or his service records provide the dates of these awards, whether they occurred before or during his period of disability inactive status, or how the medals relate to his recovery or fitness to practice law. We commend Doe for his service recognitions but are unable to consider undated information as clear and convincing evidence of recovery after the transfer to disability inactive status.

13

## B. Non-Legal Employment

[¶38] After return from military deployments Doe worked occasionally at a restaurant, taught history with a secondary education co-op, volunteered with a non-profit organization that works with soldiers, with his church, and two other organizations. Doe did not elaborate on his volunteer work. We recognize that his professional and volunteer work necessarily reflects a level of mental recovery. As other states have recognized, work history and community service are criteria to consider and can help inform recovery and fitness determinations. *Kline*, 367 P.3d at 119–20; *Schlieve*, 867 N.W.2d at 770–71; *Klein*, 756 P.2d at 1015–16. However, the limited testimony does not illustrate how these work and community service environments should be considered when evaluating recovery and fitness, particularly when the infirmity arose from the unique environment of the legal profession.

## C. Therapy and Counseling Records

[¶39] Doe began working with his counselor in June 2018, during his earlier disciplinary proceedings. He relies on a letter from that counselor discharging him from counseling, dated November 30, 2018, to support his position that he recovered from the infirmity that led to his disability inactive status. The discharge letter explains that Doe attended weekly therapy and developed a continued care plan that included: reaching out for help from others, eliminating external stressors, dissolving his law practice, and increasing his self-care such as through a physical exercise regimen.

[¶40] Doe signed an affidavit requesting transfer to disability inactive status on November 19, 2018. The stipulation that he should be transferred to disability inactive status was fully executed and submitted to the BPR on November 29, 2018. The next day, his counselor discharged Doe from counseling and noted his plan for continued, self-managed care. Approximately two weeks later, on December 11, 2018, the BPR held a hearing on the stipulation. The BPR's recommendation was provided to us later the same month. And approximately one month later—two months after the counselor discharged Doe—we transferred Doe to disability inactive status. It is difficult to conclude that Doe's mental and emotional challenges that led to the transfer to disability inactive status were resolved prior to his stipulation that he qualified for disability inactive status, prior to a BPR hearing on that stipulation, and prior to us ordering the transfer to disability inactive status. As such, we look further into the record to determine his post-transfer efforts towards recovery.

[¶41] As noted earlier in this order, the psychologist who evaluated Doe by order of the BPR recommended Doe engage in long-term counseling. She also suggested he be re-evaluated in order to be reinstated. Bar Counsel suggests this re-evaluation and compliance with the psychologist's other treatment suggestions were mandatory. Bar Counsel points to the pre-evaluation agreement reached between the BPR and all counsel

that Doe would obtain an evaluation and then comply with any treatment recommendations. However, the BPR did not require a re-evaluation or compliance with any of the psychologist's recommendations as conditions of reinstatement when it submitted its disability recommendation in 2018, nor did we when we adopted that recommendation. We do not consider the lack of a re-evaluation or completion of the psychologist's recommendations as dispositive in this case but instead consider all of the evidence Doe did provide.

[¶42] Doe testified that he continued to work with his counselor after he was discharged from her care. He testified he continues to meet with her as needed, once every month or two. Doe did not call his counselor as a witness and testified that she declined to testify without a subpoena, which he did not request, and that he could not afford the $300 she would charge to testify. Doe provided no counseling records, billing records, or letter from his counselor confirming their continued long-term counseling relationship. He testified she would not give him any records. His counsel explained that his counselor does not keep counseling records. When asked for his own calendar records at the BPR hearing, Doe had no personal records from his own calendar to corroborate his testimony that his counselor continued, and continues, to serve as his counselor. The Hearing Panel questioned Doe and his counsel in some detail during the hearing about whether his counselor was a professional counselor or a friend and whether a professional counselor could, under their own ethical or regulatory requirements, decline to keep any records.

[¶43] Doe testified that he also worked with a military chaplain. He also met with a military psychologist to determine his qualifications for deployment.[7] He testified he met with the psychologist for the better part of one afternoon and later testified they met "a couple of times" but acknowledged he did not rely heavily on that resource. No corroborating evidence—through testimony, written letter, report, or otherwise—was provided from either the chaplain or the psychologist to corroborate their ongoing or intermittent counseling with Doe or to opine, if possible, on their view of Doe's recovery or fitness to practice law.

[¶44] The evidence about Doe's post-transfer work with mental health providers is limited and does not rise to clear and convincing evidence of recovery. Though formal mental health treatment is not necessarily required to prove recovery, *Kline*, 367 P.3d 116, some evidence beyond the petitioner's testimony and the limited information presented in this case must support the recovery and fitness criteria for reinstatement.

---

[7] Doe testified that he was unsure if the psychologist was a counselor or psychiatrist or something else. "I'm not even sure what his actual thing is. But he is the mental health professional for the brigade. He did a review to see if I was qualified to deploy."

## D. Continuing Legal Education and Masters in Law

[¶45]  Doe pursued his continuing legal education throughout his period of disability inactive status.  Courses in 2019 focused on law practice management such as resilience training and trust accounting.  No courses were taken in 2020.  In 2021, courses included client intake practices, fee management, and personal development.  The majority of his courses focused on alternative dispute resolution: arbitration, negotiation, reconciliation, mediation, and the law related to international investment disputes.

[¶46]  Doe also earned an LLM during his period of disability inactive status.  During the 2018 disciplinary proceedings, Doe's stipulation indicated he might not seek reinstatement.  He testified that after his transfer to disability inactive status he was bitter, considered himself a "recovering attorney," and that he did not desire to return to practice.  Over time and while deployed and able to work with other countries in his military service, Doe's view changed.  He found his way to an LLM program in International Commercial Arbitration.  He testified to his enthusiasm for problem solving and getting people who disagree to sit down and talk.  He felt particularly drawn to mediation and highlighted his achievement winning an intra-school mediation competition.  During his LLM program, a serious accident resulted in several surgeries and hospital stays.  He continued to attend courses during his treatment and rehabilitation and completed the program as scheduled, finishing with a grade point average of 3.278.  Doe offered evidence of the accident and long rehabilitation period as evidence of that he is able to cope and adapt to stressful situations.

## E. Plans Upon Return to Practice

[¶47]  At the BPR hearing, Doe clearly articulated his desire to work as a mediator to some extent upon return to practice.  He also acknowledged that no law degree or license to practice law is required to be a mediator.  Doe testified that he would return to practice law at a firm with more than just one attorney.  He acknowledged that, for him, practicing all alone in his own firm was foolish.  He seeks the environment of a firm where he can practice mediation but also have someone else with oversight responsibilities and so he could avoid the administrative part of practice.  He did not, however, request we condition his reinstatement by limiting the environments in which he could practice.[8]

---

[8] Both parties recognized conditions could be imposed, but neither party proposed conditions to accompany Doe's reinstatement.  *See* W.R.D.P. 23(f).  Conditions in disability cases can be the same type as in disciplinary cases, such as having an attorney–mentor or supervisor; completing a prescribed number and type of CLE courses; working with other professionals; continued monitoring in substance abuse cases; prohibiting solo practice; or other conditions appropriate to the underlying conduct or disability.  *E.g.*, *Reinstatement of Feliciano*, 472 P.3d 1206 (Nev. 2020); *In re Linehan*, 867 N.W.2d 806 (Wisc. 2015).  *See also* Greenbaum, *Lawyer Transfers to Disability Inactive Status—A Comprehensive Guide*, 2017 J. of Prof. Lawyer at 59–60 (identifying common conditions in disability reinstatement decisions).

## F. Remorse and Responsibility

[¶48] Courts can also consider the petitioning attorney's recognition, remorse, and responsibility for the prior misconduct that gave rise to the proceedings. *Kline*, 367 P.3d at 124–25; *Klein*, 756 P.2d at 1015–16. The ABA's model rule for reinstatement likewise includes "recognition of the wrongfulness or seriousness of any misconduct that led to the suspension" as one of the considerations for reinstatement. Model Rules for Lawyer Disciplinary Enforcement R. 25. Doe acknowledged, in part, that he was wrong in his conduct that led to the 2018 disciplinary proceedings, and he testified that he worked to change and prevent those errors from occurring again, by taking the writing class and the MPRE. This acknowledgement, however, was diminished by other testimony. For example, he contested whether he had numerous ethical violations, conflating the three grievances with three violations. In response to the alleged violation he failed to supervise staff while he was out of town, he deflected personal responsibility, stating that "people took advantage of my [absence] on filings." Doe also disagreed he filed anything frivolous or without merit in violation of Rule 3.1 of the Rules of Professional Conduct. And, notwithstanding his reliance on his counselor's discharge letter the day following his stipulation to the disability transfer, Doe criticized the validity of the prior disciplinary proceedings, questioning whether he was competent to sign his stipulations or affidavits. He testified he signed his affidavit admitting wrongdoing in order "to be done" but that he likely would not have signed the stipulation and affidavit admitting misconduct if he was presented with it again. The record does not support a conclusion Doe recognized, took responsibility for, or expressed remorse for the alleged violations to which he stipulated and which gave rise to his disability transfer.

### *Burden to Present Clear and Convincing Evidence Not Met*

[¶49] The record evidences that Doe has changed since being transferred to disability inactive status. Prior to that transfer, in 2018, his demeanor was emotional, and he had difficulty participating in the proceedings. In 2022, he was able to participate in the reinstatement proceedings and testify with clarity. His volunteer activities, his work as a secondary education and military instructor, and his perseverance in his LLM program after his accident all weigh in his favor and reflect Doe's strength in character.

[¶50] Doe asks that we rely on his personal growth, success in a non-legal field as a military service member, and success in the academic environment of an LLM program to find "proof in the pudding." We are not able to make that leap. The record establishes that Doe's depression and anxiety arose from the pressures of his law practice. He has been removed from those pressures for many years. While he later successfully managed the stresses of military deployment, the relationship between the stressors endemic to the two fields, and coping mechanisms for each, was left undeveloped in the record. His service in the military continued, uninterrupted, despite the infirmity that was specific to legal practice. Thus, his post-transfer completion of military trainings, and evaluations,

by themselves, do not corroborate his recovery from mental and emotional infirmity that arose from the practice of law and did not impact his pre-existing and continuing military service.

[¶51] Nor do Doe's personal assurances or the release from counseling that predated his transfer satisfy the clear and convincing evidentiary standard we must apply. Doe recognizes that counseling is a tool that is available to him when he needs it. However, he presented no corroborating evidence of his work with professionals in this area or recommendations about his mental or emotional health, performance in high-stress situations, or the likelihood of successful performance under the pressures of legal practice that previously led to his impairment and transfer. Doe takes limited responsibility for the underlying disciplinary proceeding, and admittedly did not respond to Bar Counsel's requests for more information after he filed his petition for reinstatement.

[¶52] In conclusion, Doe did not present us with sufficient evidence of his recovery to endorse his unconditional reinstatement to the practice of law. Our role is to ensure the profession meets the highest standards—reinstatement in the face of sparse evidence would do little to uphold the high standards of our profession.

### *Fitness to Practice*

[¶53] We briefly address the fourth criteria for reinstatement, fitness to practice law. W.R.D.P. 23(g). The hearing transcript suggests that all parties equated recovery with fitness to practice, i.e., that Doe was previously unfit to practice because of his mental and emotional infirmity and therefore fitness to practice requires evidence of recovery. W.R.D.P. 20, entitled Disability Inactive Status, does not distinguish between disability and lack of fitness. Rule 23, however, identifies fitness to practice as a separate and distinct element to be proven for reinstatement. Some legal commentary also suggests they are different elements, with different types of proof. Greenbaum, *Lawyer Transfers to Disability Inactive Status—A Comprehensive Guide*, 2017 J. of Prof. Lawyer at 57–59. The parties did not address this issue in their briefing. Having found Doe did not meet his burden to show recovery, we decline to address whether in the context of this disability proceeding recovery and fitness are equivalent.

### *Pending Disciplinary Matter*

[¶54] The disciplinary matter that began in 2017 and gave rise to the parties' 2018 stipulation and the BPR's two-part recommendation remains pending because in 2019 we did not act on the BPR's second recommendation, to suspend Doe for a period of thirty months. At the BPR hearing in this reinstatement proceeding, all parties expressed some confusion as to why the 30-month stipulated suspension, retroactive to the date of the transfer to disability inactive status, had not yet been entered. The parties' stipulation and the BPR's recommendation both requested that suspension and a public censure be entered

18

**when reinstatement occurred, or when disbarment occurred automatically after seven years if Doe did not seek reinstatement**. Neither of those events have yet occurred.

[¶55] Accordingly, we expect that any subsequent recommendation concerning Doe's reinstatement will include a recommendation to impose the 30-month suspension, retroactive to the date of the transfer to disability inactive status; to consider the 30-month suspension period complete upon reinstatement; and to request the issuance of the agreed upon notice of public censure once reinstatement occurs.[9]

## *CONCLUSION*

[¶56] Doe did not meet his burden to prove, by clear and convincing evidence, his recovery from the infirmity that gave rise to the transfer to disability inactive status. His petition for reinstatement is therefore denied.

[¶57] Doe can re-apply for reinstatement without delay. W.R.D.P. 23(b). Once a new petition is filed, he and Bar Counsel are subject to the mandatory requirements of conducting an investigation, providing fulsome disclosures and waivers related to providers, and cooperating during that investigation. While proof of formal treatment is not required, Bar Counsel may request an independent evaluation as part of its investigation. W.R.D.P. 23(e). *See also* ABA, Model Rules for Lawyer Disciplinary Enforcement R. 23.E(3) (allowing the attorney or the bar to pay for such evaluations). While Doe bears the burden of proof for reinstatement, a collaborative approach may result in a stipulation and an expedited proceeding. If either party seeks to condition Doe's reinstatement pursuant to W.R.D.P. 23(f), information should be provided to support any requested conditions.

---

[9] The stipulated delay in entering the 30-month suspension raises an ancillary issue related to reinstatement after disciplinary suspension. The current proceedings are for reinstatement after a period of disability inactive status. *See* W.R.D.P. 23. Reinstatement after a disciplinary suspension longer than six months requires its own petition for reinstatement and is subject to the legal standards and burden of proof set forth in W.R.D.P. 22. They are not equivalent proceedings.